Timothy Charles **PROCK**, Appellant,

v.

The **STATE** of Oklahoma.

No. F–74–635.

Court of Criminal Appeals of Oklahoma.

Nov. 4, 1975.

Robert S. Durbin, Deputy Chief Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. McCurdy, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant Timothy Charles Prock, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–73–1876, for the offense of Carrying Firearms, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1283. His punishment was fixed at a term of five (5) years' imprisonment. From said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Charles Cravens testified he was employed by the Tulsa Police Department, Patrol Division. On October 1, 1973, at approximately 4:30 p. m., he was dispatched to South 51st Street and Harvard, in Tulsa, Oklahoma, to check on a "suspicious" car. Upon arriving at that lo-

cation he observed a 1964 black over maroon Chevrolet automobile parked on the west side of a Git-N-Go store located in that vicinity. When he pulled into the area in which the Chevrolet was located, he noticed the license tag number and that a male occupant was inside the automobile, being over the back of the seat. Officer Cravens further testified that as he pulled into the parking lot the occupant of the Chevrolet started the car, but as the officer pulled alongside he turned off the engine. Officer Cravens then identified the defendant in court as the person he had observed in the 1964 Chevrolet. After pulling alongside the defendant, Officer Cravens exited his patrol unit and walked up to the defendant's automobile. He asked the defendant for some identification and the defendant reached into his back pocket and pulled out two pieces of paper. The defendant attempted to palm a draft card in his right hand to keep the officer from seeing it, but Officer Cravens was able to observe that it bore a different name from the defendant's. Officer Cravens then asked the defendant to step out of his car and as the defendant did so Officer Cravens observed the butt of a gun. Officer Cravens then "frisked" the defendant, removing a loaded .32 caliber Colt revolver from the defendant's waistband. Officer Cravens finally testified that in his opinion the gun was capable of firing a projectile.

The State then rested.

Peggy L. Prock testified for the defendant and stated that she was the wife of the defendant. She stated they were married on the 21st of December, 1973, and that the .32 caliber Colt pistol, previously introduced in evidence as State's Exhibit No. 3, was owned by her and that she had bought the pistol for her own protection. She stated that the last time she had seen the gun was on September 28, 1973, at the Bomber Lounge, a club where she worked part time, and where she had brought the pistol, along with a sack of bullets. When she had last seen the pistol, it was in the back storeroom of the Bomber Lounge. On October 1, 1973, she called Ronald Knight, owner of the lounge, and asked him to bring the pistol to her.

Ronald Knight testified he was the owner of the Bomber Lounge on October 1, 1973. He stated that Peggy Prock had left the pistol, State's Exhibit No. 3, at his club on a previous occasion, and as the result of a telephone call from her he placed the pistol in a sack with the intention of delivering it to her. Instead, he took the sack containing the pistol to the defendant at a Git-N-Go store and asked the defendant to take it to Peggy because he had to get back to the club and attend to his "after work crowd." It was approximately 3:30 or 4:00 p. m. on October 1, 1973, when he delivered the pistol to the defendant.

On cross-examination he testified the gun was not loaded when he delivered it to the defendant and that the cartridges were in the sack with the gun.

Thereafter, both sides rested and the case was submitted to the jury who found the defendant guilty of carrying a concealed weapon.

The court then proceeded into the second stage of the trial.

Through Mr. Don Austin, Tulsa County District Court Clerk, the State presented evidence that the defendant had been previously convicted of 15 felonies.

The State then rested.

Peggy Prock, defendant's wife, testified in behalf of the defendant stating that she had bought the gun, State's Exhibit No. 3, for her own protection. She stated that her ex-husband, over a period of years, had threatened her life and had brutally beaten her on more than one occasion. These beatings had resulted in a broken nose, fractured ribs and a skull fracture, and that on numerous occasions these beatings had required hospitalization, a fact which she had related to her husband, the defendant. She then testified as to numerous specific incidents of maltreatment at the hands of her ex-husband, including one

occasion when she was attacked by her ex-husband in the presence of the defendant, who intervened in an attempt to assist her.

The defendant then presented three other witnesses, all of whom corroborated Peggy Prock's testimony concerning the beatings and harassment which she had sustained from her ex-husband.

■ Defendant's first assignment of error asserts the trial court erred in overruling his demurrer to the evidence. Under this assignment, the defendant contends that the State failed to prove that State's Exhibit No. 3, the gun, was dangerous or deadly by showing that the gun was capable of firing a projectile. With this contention we cannot agree. Officer Cravens testified that State's Exhibit No. 3 was a .32 caliber Colt double action gun. He further testified that it was a real gun and was capable of firing a projectile. Further, the record reveals that the State attempted, through Officer Cravens, to show that the gun actually would work; however, the defendant objected and the trial court sustained the objection, allowing Officer Cravens to testify only that the gun worked, but not allowing him to show that the gun worked. It is therefore our opinion that the State did present sufficient evidence to show that the gun in question was one clearly prohibited by 21 O.S.1971, § 1283, the statute prohibiting a person convicted of a felony from carrying a gun on his person. We therefore find this assignment of error to be without merit.

Defendant's second assignment of error asserts he was not properly arraigned on the second page of the information filed by the State, this being the part of the information which alleged the former felony convictions.

The record reveals that the defendant requested a two page information with the second page alleging the former felonies. The defendant further requested that he be tried in a two stage proceeding which is contrary to our holding in *Marr v. State,* Okl.Cr., 513 P.2d 324 (1973), which states:

"We thus conclude that because of the passage of 21 O.S. § 1289.7 that the previous convictions of a felony is a necessary element of the crime charged which should be pleaded and proven during the State's case in chief in a one stage proceeding. . . ."

Both of defendant's requests were granted by the trial court and the defendant was tried in a two stage proceeding. The defendant now contends that he was never arraigned on that portion of the information which charged "after former conviction of a felony."

■ The record before this Court reveals that on February 19, 1974, the defendant appeared in person and with counsel for arraignment and the following minute was made at that time:

"DEFT PRES IN OPEN COURT AND REP BY SKIP DURBIN, STATE REP BY CLIFF HOPPER. DEFT AT THIS TIME RENEWS, ALL MOS PREV. FILED. ALL MOS OVERRULED, EXCEPTION ALLOWED. ORAL MOS TO STRKE THE LAST FOUR WORDS AND FIGURES, ON INFO. OVERRULED, EXCEPTION ALLOWED. AMENDED INFO FILED. DEFT WAIVED READING ON INFO. DEFT WIAVED [sic] TIME IN WHICH TO PLEAD AND ENTERED A PLEA OF NOT GUILTY. DEFT REQ CASE SET ON MARCH JURY DOCKET, FOR JURY TRIAL. DEFT TO REMAIN IN CUSTODY OF SHERIFF IN LEIU [sic] OF $5,000 BOND. REPORTER SALLY SELF. WWM"

We further find that the amended information filed on February 19, 1974, which is contained in the original record, does have the second page charging the after former portion attached to the first page of the information. However, the defendant's contention that this portion of the information

was not attached until after his trial is not supported by the record and this Court will not presume error when the record before us reflects the contrary. It is therefore our opinion that this argument is without merit. It is further our opinion that although the defendant was tried in a two stage proceeding, which is contrary to our prior opinion in *Marr*, supra, the defendant was not prejudiced as a result of the two stage proceeding, but was afforded more safeguards than if he had been tried in a one stage proceeding.

■ Defendant's third assignment of error asserts misconduct of the jury. The record reveals that the foreman of the jury made a reference to the other jurors that persons convicted and sentenced to the State penitentiary were given "good time credits" and did not have to serve the full sentence. This reference occurred while the jury was deliberating defendant's punishment. The trial court held a hearing on this matter wherein the foreman and six other jurors testified. The foreman stated that his knowledge of "good time credits" did affect his verdict insofar as the punishment went. The other six jurors testified that the foreman's statement to them did not affect their verdict in any manner. After this hearing, the trial court reduced the jury's verdict from a term of six (6) years and one (1) month to a term of five (5) years. The law is well settled in this jurisdiction that a verdict of conviction will be set aside where during the deliberation of the jury a juror makes a statement to his fellow jurors as to his personal knowledge concerning material issues in the case, and which influences the jury in arriving at their verdict. See, *Ned v. State*, 28 Okl.Cr. 419, 231 P. 550 (1924). However, in the instant case the complained of reference was made when the jury was deliberating the defendant's punishment. Further, the only juror who stated that his knowledge of "good conduct credit" influenced his verdict was the foreman who made the reference. And, we find the trial court reduced the jury's verdict which cured the error, if any. We therefore find the defendant's third assignment of error to be without merit.

■ Defendant's fourth assignment of error asserts that his arrest was unlawful and all evidence obtained as a result was inadmissible. With this contention we cannot agree. The record reveals that on October 1, 1973, Officer Cravens, while on duty, received a radio dispatch to check a man in a car on the west side of the Git-N-Go store who was acting suspiciously. The dispatch described the car as a black over maroon vehicle with an "ME," Muskogee County tag. Officer Cravens stated that as he approached the defendant's vehicle he observed the defendant bent over the back of the front seat and that he appeared to be going through some items which were on the back seat. As he drew closer, the defendant stopped what he was doing and quickly turned around in the seat and started his car. Upon pulling alongside the defendant, the defendant turned off his car. Officer Cravens then approached the defendant, introduced himself and asked the defendant for identification. The defendant could not produce any identification at this time, however, the defendant "palmed" a draft card which he had taken out of his billfold, cupped in his hand, and then turned his hand down on the inside of his leg. At this time Officer Cravens asked the defendant to step from his car. As the defendant stepped from his car, Officer Cravens observed the form of a gun butt under the defendant's shirt. He then frisked the defendant and removed a loaded .32 caliber Colt Pocket Positive revolver. Officer Cravens then placed the defendant under arrest. Under appropriate circumstances police officers, in the course of their duty, may approach and question suspicious individuals in order to determine their identity or to maintain status quo momentarily while obtaining more information, even though there are insufficient grounds for arrest. See, *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) and *United*

*States v. Saldana,* 453 F.2d 352 (10th Cir. 1972), and cases cited therein.

 It is therefore our opinion, in the instant case, that Officer Cravens was in a place he had a right to be, having been dispatched to investigate the suspicious action of the defendant, and was justified in asking the defendant to step from his car after the defendant failed to produce any identification, and after the defendant attempted to hide a draft card from the officer. The officer was further justified in his action in removing the gun from the defendant's person and placing him under arrest.

The defendant's fifth assignment of error asserts error in the trial court's refusal to allow him to present evidence of an alleged "defense of necessity" during the case in chief.

We first note that the trial court did allow the defendant to present this evidence in the second stage of the trial for the purpose of mitigation of punishment. See, *Sessions v. State,* Okl.Cr., 494 P.2d 351 (1972). We further observe that the evidence, which the defendant wished to present in the case in chief bearing on the defense of necessity, revealed only that defendant's wife, to whom he was not married on the day of the offense, may have had a need to possess the gun to protect herself from her ex-husband. Therefore, without reaching the issue of whether the defense of necessity is an accepted defense in this jurisdiction for any given crime, we find that the trial court properly refused to allow the defendant to present this evidence in the case in chief.

Defendant's final assignment of error asserts error in the trial court's rejection of his requested instructions numbered 1, 2, 5 and 7. We have carefully reviewed all of the trial court's instructions as a whole as well as defendant's requested instructions and find that the trial court's instructions generally covered the subject matter of inquiry and, therefore, find no error in the trial court's refusal of defendant's requested instructions.

In conclusion, we observe that the evidence amply supports the verdict of the jury, and that the record is free of any error which would justify modification or reversal. For the reasons stated, the judgment and sentence appealed from is *affirmed.*

BRETT, P. J., and BLISS, J., concur.