**Charles REVELS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–680.**

Court of Criminal Appeals of Oklahoma.

July 25, 1983.

Patti Palmer, Deputy Appellate, Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen. of Oklahoma, John O. Walton, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Charles Revels was convicted in Comanche County District Court of Feloniously Carrying a Firearm and was sentenced to four (4) years' in prison.

At the jury trial, the parties stipulated to Revel's two prior felony convictions for burglary. The arresting officer testified that on February 16, 1982, at about 11:30 p.m., he, along with a second officer and an agent, all in plain clothes, were cruising in an unmarked car when he saw a man coming out of the office building of a closed used car lot. Lights were on in the building but the outside lights were off. The officer knew the owners and had seen them at the used car lot late at night on previous occasions but he did not see them this night.

Fearing a burglary, the officer decided "to go back and stop the individual to see if the place had been broken into . . . ." (Tr. 83) The officer made a U-turn and pulled next to appellant who was walking along the sidewalk. The officer "hollared" "Hay!" Revels kept walking. The officer stopped the car, got out, and said "Stop. Police." He turned around, looked at the officer and started to walk on. The officer walked up ·to him, said "Hay! Police. I need to talk to you", and showed his badge. The officer then recognized him as someone with whom he had had dealings before.

The officer testified that appellant's hands were in his coat pockets and that he acted "nervous" whereas during previous dealings with the officer he had not acted "nervous." For his own protection, the officer frisked him, patting down his clothes until he felt an object like a gun. Putting his hand into the coat pocket, the officer found a .38 caliber pistol. Later investigation revealed nothing amiss at the used car lot. In fact, the record indicates that appellant *was employed by the owners of the car lot.* Revels offered no evidence in his behalf.

Appellant argues that the trial court erred in failing to suppress the pistol as evidence obtained in violation of his Fourth Amendment right to be free from unreasonable search and seizure. We agree.

■ "The Fourth Amendment to the United States Constitution governs not only traditional arrests but also 'seizures' of the person which do not eventuate in a trip to the station house . . . ." *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 903 (1968).

[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.

To justify a particular seizure, the officer must be able to point to specific and articu-

lable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The facts must be judged against an objective standard:

> [W]ould the facts available to the officer at the moment of seizure ... 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

88 S.Ct. at 1880, 20 L.Ed.2d at 906. Good faith or an inarticulate hunch is not enough.

■ When the officer "hollared" "Stop. Police.", appellant was "seized" within the meaning of the Fourth Amendment. The officer himself testified that he was not free to go, that "he could not have just walked away if he wanted to", even before the frisk. (Tr. 113). The question, then, before this Court is whether the facts, and reasonable inferences therefrom, available to the officer at the moment of seizure, warranted him in concluding that Revels had committed, was committing, or was about to commit a crime? We think not.

The officer based his decision to stop Revels upon two facts: (1) he came out of a closed business at 11:30 p.m. and (2) he was not the owner of that business. Treated objectively as *Terry* requires, these facts and inferences are insufficient to warrant the conclusion that appellant might have burglarized the car lot office.

> There must be something at least in the activities of the person being observed or in his surroundings that affirmatively suggests particular criminal activity, completed, current, or intended.

*Sibron v. New York,* 392 U.S. 40, 73, 88 S.Ct. 1889, 1907, 20 L.Ed.2d 917, 941, (1968).

But here, his behavior was at least as consistent with innocent activity as with criminal activity. His conduct was not unusual; the officer himself had seen people at the car lot late at night before. He made no attempt to hide, run, or avoid the police. His actions were not furtive. The officer had no evidence whatever that a burglary or any other crime had occurred. Nor is there even any indication that the car lot was in a high crime area. Since we limit our holding to the peculiar facts of this case we need not define the ambit of police discretion to stop and frisk. We simply conclude that the inference that a person who emerges from a closed business at night is a burglar is not the kind of reasonable inference required to support an intrusion by police. It is merely a hunch and, as *Terry* states, a hunch is not enough to justify a seizure.

The circumstances of the instant case were considerably less suspicious than those in *Sibron,* supra, which the United States Supreme Court found insufficient to justify the seizure of a person observed over an eight-hour period talking with a number of known narcotics addicts.

The circumstances of the instant case are much closer to those in *United States v. Hostetter,* 295 F.Supp. 1312 (Del.D.C.1969) where it was held that the police officers had no reason to stop or seize a shabbily dressed stranger, walking slowly in the rain at 3:20 a.m., carrying what appeared to be a new black suitcase, when the police had received no complaints of thefts or burglaries in the area and where the stranger made no attempt to flee or avoid the officers.

The State directs our attention to *Dentis v. State,* 578 P.2d 362 (Okl.Cr.1978) and *Prock v. State,* 542 P.2d 522 (Okl.Cr.1975) as examples of appropriate circumstances justifying an officer's approaching and questioning a suspicious individual. *Prock,* where an officer detained the driver of a car parked in front of a convenience store, is distinguishable in that the officer was dispatched expressly to investigate that particular "suspicious" car. In the instant case, the officer had no previous knowledge of any "suspicious" activity at the used car lot. In *Dentis,* this Court held that an officer's decision to detain an individual was proper where, shortly after midnight, he observed a person whom he had arrested only two weeks earlier at the scene of a burglary, walk away from a closed laundromat and place something in the trunk of a car. The circumstances in the instant case were considerably less suspicious. At the

moment he decided to stop the appellant, the officer had no idea of his identity. Nor did it appear that he was removing anything from the office.

As the State correctly points out, *Terry* does not require a policeman who lacks probable cause to arrest to shrug his shoulders and allow a crime to occur or a criminal to escape. In the instant case, however, the officer had no evidence, only a hunch, that a crime might have occurred. Since the seizure was unlawful, it follows that the frisk was unlawful, and any evidence obtained therefrom should have been suppressed. Accordingly, we REVERSE.

BUSSEY, P.J., and BRETT, J., concur.