**Walter James McMULLEN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–75–664.**

Court of Criminal Appeals of Oklahoma.

April 7, 1976.

E. Terril Corley, Asst. Public Defender, William R. Edmison, Legal Intern, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Walter James McMullen, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–2332, for the offense of Uttering a Forged Instrument, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1592. His punishment was fixed at a term of fifteen (15) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

Marjie Haywood was performing her duties as a clerk in Nate Carlis' liquor store, located at 2601 North Peoria, Tulsa, Oklahoma, when sometime during the morning of October 1, 1974, three individuals entered the liquor store and asked to cash checks drawn on J. C. Roofing Company. She had enough money to cash two of the checks but she informed the person presenting the third check that he would have to come back later. Mr. Nate Carlis, owner of the liquor store, came into the store around noon and picked up the checks which had been cashed during the morning business hours and took them to

the bank, as was his routine procedure. Shortly thereafter, Marjie Haywood received a call from Mr. Carlis from the bank at which time he informed her that the checks were bad and that if any other individuals came back and attempted to pass checks on the J. C. Roofing Company she should call him at the Sears store located at Pine and Lewis, of which he was the manager. The individual who had presented the check earlier in the day returned later that same afternoon and Mrs. Haywood notified Mr. Carlis by phone, and explained to the individual that Mr. Carlis should be back in a short time with some money from the bank and that she could then cash his check. The individual waited for a short period of time and then left. After he left Mr. Carlis came back and Mrs. Haywood informed him that the individual had left. Mr. Carlis went out to see if he could locate the individual in the area surrounding the store and in Mr. Carlis' absence the individual returned. When Mr. Carlis returned the individual was still there and Mrs. Haywood indicated that this was the person attempting to pass the check as per their prearranged signal. Mr. Carlis took the check and indicated that he would have to call the bank to see if the check was any good. While he was talking to the bank the individual departed the store in a rapid manner. He followed the individual out of the store and observed him get into what he believed to be about a 1955 model Buick which was brown on the bottom with a light colored top. He wrote down the tag number and description and asked Mrs. Haywood to call the police. The vehicle drove away and Mr. Carlis got in his truck in an attempt to give chase. He followed the vehicle to the intersection of Oklahoma and Madison Streets, at which point he gave up and returned to his liquor store.

Upon his return to the liquor store, Mr. Carlis gave Officer C. M. Allred, of the Tulsa Police Department, a description of the individual who had attempted to pass the check, the check itself which was sub-

sequently labeled and identified State's Exhibit No. 1, a description of the automobile, and the tag number, ZN-8742. After relating the above testimony at trial, Mr. Carlis positively identified the defendant as the individual who had attempted to pass the check in question. He further testified that he had identified the defendant from a photo lineup shown to him on the evening of October 1, 1974. Mrs. Haywood, however, was unable to identify the defendant as the individual who had attempted to pass the check.

The State called Maryetta Bradley who testified that she was employed at the American State Bank of Tulsa and that her duties included verifying the signatures on checks when they came through the bank. She further testified that the J. C. Roofing Company had an account in that bank, and that J. C. Williams was the only person authorized to sign checks drawn on that account.

Jessie C. Williams was called and stated that he was in the roofing business and conducted such business as the J. C. Roofing Company. He testified that sometime during the month of September a number of checks had been stolen from his place of business and that State's Exhibit No. 1 was one of those checks. He then stated that the signature appearing on the American State Bank of Tulsa signature card, identified as State's Exhibit No. 2, was in fact his, and that the signature appearing on the check identified as State's Exhibit No. 1 was not his. Further, he testified that he had given no one permission to sign his name or to use any other signature on those checks.

Officer Allred testified that after going to the liquor store and receiving the above mentioned descriptions he received a radio call indicating that the suspect vehicle had been apprehended. He then proceeded to the intersection of Oklahoma and Madison Streets where he observed Officers Nuttall and Carlile with two Negro males spread-eagled over their police vehicle. He stated that the vehicle was a white over brown 1960 Buick, which bore the above men-

tioned license. He further testified that he transported defendant to the Tulsa City Jail and turned the check received from Mr. Carlis over to the City Jail property room.

On cross-examination Officer Allred testified that the defendant was slightly unstable on his feet and that at no time had he been requested to obtain a crutch for the defendant from the apprehended vehicle.

Officer Joe Carlile, of the Tulsa Police Department, testified that after receiving a description of the vehicle and individual he and Officer Roy Nuttall responded to the call and located the vehicle described by Mr. Carlis at a laundry parking lot in the area of Oklahoma and Lansing Streets. He stated that the vehicle was a brown 1960 Buick with a white top, bearing the license number ZN-8742. He further stated that three individuals were in the vicinity of the vehicle and identified the defendant as one of those persons. The defendant was arrested at the scene and transported to the City Jail by Officer Allred.

The State then entered certified copies of the judgments and sentences of the former convictions, pursuant to the stipulation agreed upon prior to trial. The said agreement was made prior to trial in chambers, during which the defendant, through his attorneys made request of the court that the proceedings be had in one stage. The defense also stipulated to the judgments and sentences in the convictions alleged on the second page of the District Court information. The court inquired of the defendant whether he understood that the normal procedure after former conviction provides for a two stage proceeding and that in the present situation, if the defendant's request were granted, the court would instruct the minimum sentence of ten years in the State penitentiary. The defendant replied in the affirmative, and the court granted the defendant's request. At this point the State then rested its case in chief.

The defendant called as his first witness Dr. Mason Lyons. Dr. Lyons testified

that he was a physician for the City of Tulsa and that on the 2nd day of October, 1974, he examined the defendant at the Tulsa City Jail. The defendant had presented himself on morning sick call and had complained of a sore ankle. The doctor further stated that upon examination of the ankle he noted a slight amount of swelling and that the defendant had a slight limp. The ankle was treated by wrapping with an elastic bandage to give it support. On direct examination, Dr. Lyons responded to a hypothetical question as follows:

"Q. Sir, are you able to determine if say from the injury two weeks from that date, the way it was at that particular time, would you be able to determine it two weeks earlier, if his injury would have been such that you would have probably recommended he be placed on crutches?

\* \* \* \* \* \*

"A. It is quite likely that, depending on the severity of it, quite frequently we do recommend crutches to keep weight off of it for a few days." (Tr. 124)

On cross-examination, Dr. Lyons stated that he had only seen the defendant that one time, October 2, 1974, and had no knowledge of the condition of the defendant's ankle prior to that date; nor did he have knowledge of whether it were such a condition to require crutches.

The defendant then took the stand in his own behalf. He testified that he resided at 1223 North Kenosha, Tulsa, Oklahoma, and that on the date of October 1, 1974, he had been at that residence most of the day. He further stated that he left the house only three times during the day. The first occasion was at approximately 9:00 a. m., at which time he walked down the street to his mother's house. He remained at his mother's residence until approximately 11:00 a. m., at which time he returned to the house located at 1223 North Kenosha. He next left the house at approximately 12:05 p. m., going to the Redbud Food Center on Cincinnati Street in the company of Betty White and her mother. He next stated that the last time he left the house on that date was at 3:45 p. m. This departure was in the company of Robert White and White's father. He further stated that at no time on the 1st of October was he at the Nate Carlis' liquor store. He further told the jury that he did not have anything to do with the attempt to pass a check at the liquor store and that he was innocent of the charge alleged. He next stated that he was arrested very shortly after leaving his home with Robert White and White's father, and that on the day in question he was using a crutch to assist him in walking due to the swollen ankle. He further stated that he had requested the police to allow him to obtain his crutch prior to being transported to the jail, but that they refused.

On cross-examination, the defendant stated that he had injured his ankle by stepping in a hole and twisting it. He further stated that this accident occurred in the presence of Donnie McMullen, defendant's brother, Mrs. Betty White and Mrs. Rosemary Davidson. Also present was Reggie Morris. He next stated that he was able to fix the time of his last departure from the residence at 1223 North Kenosha by the sports report presented at 15 minutes before the hour on radio station KKUL, which he had listened to immediately prior to departing the house. At this point the defense rested its case in chief.

The court instructed the jury and closing arguments were heard.

The defendant's sole assignment of error alleges that the trial court erred in allowing the Assistant District Attorney to make statements during his closing arguments that were prejudicial to the defendant. He contends that these statements were so prejudicial as to constitute a denial of due process of law because they impaired the defendant's capacity to have a fair and impartial trial.

██ After a careful review of the complained of statements and argument,

this Court cannot agree with defendant's contention. This Court has held on numerous occasions that the right of argumentation contemplates a liberal freedom of speech, and wide range of discussion, illustration and argumentation, and counsel for the State and counsel for the defendant have the right to discuss fully from their standpoint the evidence and inferences and deductions arising therefrom. See *Pickens v. State*, Okl.Cr., 450 P.2d 837 (1969); *Harvell v. State*, Okl.Cr., 395 P.2d 331 (1964). Furthermore, it is well settled in this jurisdiction that the remarks of the prosecuting attorney, to constitute reversible error, must be grossly improper and unwarranted upon some point which may have affected defendant's rights. See, *Klinekole v. State*, Okl.Cr., 456 P.2d 623 (1969). We find that the complained of comments by the Assistant District Attorney were within a discussion, illustration and argumentation allowed by law. Accordingly, we find this proposition to be without merit.

In conclusion we observe the record is free of any error which would justify modification or reversal. Judgment and sentence is, accordingly, AFFIRMED.

BUSSEY and BLISS, JJ., concur.