Gale Franklin BARNHART and Shelia Diane Barnhart, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–75–633.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1977.

Rehearing Denied Feb. 7, 1977.

Joseph L. Hull, III, Linda E. Childers, Tulsa, Okl., C. Michael Zacharias, Claremore, Okl., for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Gale Franklin Barnhart and Shelia Diane Barnhart, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–74–1418, for the offense of Unlawful Possession of a Controlled Drug (cocaine), in violation of 63 O.S.Supp.1972, § 2–402. Defendant Gale Franklin Barnhart's punishment was fixed at thirteen (13) years' imprisonment on the basis of a former conviction for Possession of Marijuana with Intent to Distribute. Defendant Shelia Diane Barnhart's punishment was fixed at four (4) years' imprisonment, and from said judgments and sentences a timely appeal has been perfected to this Court.

At the trial, Donald Flynt, a forensic chemist with the Oklahoma State Bureau of Investigation, testified that on December 30, 1974, Dr. Ken Williamson brought certain evidence to the laboratory in Oklahoma City. He testified that he examined Exhibit A, a paper bindle, which he removed from State's Exhibit No. 1; that after conducting certain tests upon the contents of Exhibit A, he was of the opinion that the white powder was cocaine.

Fred Taylor testified that he was a police officer for the City of Tulsa, assigned to the narcotics division; that on March 18, 1974, at approximately 2:00 p. m. he went to a residence at 1148 South 75th Street in Tulsa, Oklahoma, for the purpose of serving a search warrant. He knocked on the door and upon receiving no response announced that they were police officers. He opened the unlocked storm door and observed defendant Gale Franklin Barnhart coming from a bedroom at the back part of the residence. He again identified himself and his companions as police officers and served a copy of the warrant on defendant Gale Franklin Barnhart. Defendant Gale Franklin Barnhart stated that he wanted to go back into the bedroom to get some money. Taylor followed him into the bedroom and observed defendant Shelia Barnhart sitting on the edge of a bed. Taylor conducted a search of the bedroom and observed a box on a table near the bed containing a vegetable substance which he believed to be marijuana. A roach clip pipe and scissors were also found on the table. He found a white folded piece of paper in a Marlboro cigarette package between the mattress and boxsprings of the bed. He placed the Marlboro package in his shirt pocket and placed the other items on the bed. He searched the kitchen where he found a metal cannister sitting on top of the refrigerator. Another white folded piece of paper was found in the cannister which contained a white powdery substance. He searched the garage where he found a large marijuana pipe. He identified State's Exhibit No. 1 as an evidence bag in which he placed the evidence he found in the bedroom and from the refrigerator top. He identified State's Exhibit No. 4 as the metal container found on top of the refrigerator. He identified State's Exhibit No. 3 as a jewelry box which he found laying on the bed when he returned into the bedroom, containing two black capsules. He further identified State's Exhibit No. 6 and No. 7 as being envelopes addressed to Mr. and Mrs. Gale Franklin Barnhart, giving the address of 1148 South 75th East Avenue, Tulsa, Oklahoma. All of the evidence was placed in a container and transported to the property room at the police station.

Officer William McDonald testified that he was assigned to the narcotics squad and accompanied other officers to 1148 South 75th East Avenue to serve a search warrant. He identified State's Exhibit No. 5 as two butter containers which he found in the icebox which contained what he believed to be marijuana. He identified State's Exhibit No. 3 as a box which he found in a closet of the back bedroom.

Sgt. Frank Meyers testified that on March 18, 1974, he assisted Officers Taylor and McDonald in serving a search warrant. He went to the rear of the residence while Officers Taylor and McDonald went to the front. Upon his entering the residence he observed defendants Barnhart and a small child.

Dr. Ken Williamson testified that he was a forensic chemist for the City of Tulsa. He identified State's Exhibit No. 1 as an evidence bag which he checked out from the Tulsa Police Department property room; that he conducted certain tests of items contained in State's Exhibit No. 1; that item A was a white paper bindle containing a white powder marked "ref., top"; that item B was a white paper bindle containing a white powder marked "Marlboro pack." He testified that he conducted certain tests on State's Exhibits A and B. In his opinion, State's Exhibit B was cocaine; however, he had a shadow of a doubt as to the positive identification of item A as definitely cocaine. Because of that doubt he transported the evidence to the State Crime Bu-

reau and requested Don Flynt to examine item A. He testified that in his opinion items C, D, E and F, all contained marijuana. He identified State's Exhibit No. 3 as an evidence bag containing a black box. The two black pills found in the box were examined and found to contain amphetamine. He identified Item H as a amber pill vial containing suspected hashish. The substance, upon being analyzed, revealed that the same was not hashish. Items I, J, K and L were all examined and found to contain marijuana. State's Exhibit No. 4 was identified as a pair of scales, cigarette papers, a cigarette holder, some seeds and vegetable material. He lastly identified State's Exhibit No. 5 as two plastic margarine tubs which contained marijuana.

For the defense, Officer Fred Taylor was recalled and testified that prior to March 18, 1974, he executed an Affidavit for a search warrant; that in the Affidavit he averred that on March 12, 1974, he and a reliable informant went to the defendants' residence during the evening hours; that the informant went into the house and upon his return told Taylor that he had purchased Desoxyn from an individual known only as "Frank." The informant also told him that there were over 200 Desoxyn tablets inside the residence. He admitted that on March 18th upon serving the search warrant no Desoxyn was found. He testified that he was familiar with Myra Alexandra King. On cross-examination he testified that he had used Myra King as an informant; however, she was not the one who made the buy from the defendants on March 12th.

Myra Alexandra King testified that she met Officer Taylor when he arrested her for possession on November 5, 1973; that prior to her trial she had a discussion with Officers Taylor and McDonald upon advice of her attorney. She was encouraged to give the officers leads on other people who might be using drugs; that Officer Taylor called her several times thereafter wanting information; that she later told Officer Taylor that the defendants might be getting 200 Desoxyn tablets. She further testified that she gave the officers this information because they continued to pressure her, but she did not give the information because she felt that they were guilty, but only because she wanted to insure her deal with the police department. She testified that she did not know whether or not she was the informant mentioned in the search warrant, but that she had been informed by Officer McDonald that she had gotten credit for the "bust."

Charles Summerland, Diane Barnhart's father, testified that his son-in-law, Frank, worked with him as a junior partner in an oilfield equipment and contracting business; that on March 12, 1974, he accompanied the defendants and their son to Boynton, Oklahoma, to look at a farm. They returned to his home at approximately 5:30 p. m. and had supper. The defendants remained at his home until after 11:00 p. m. He testified that his daughter did not smoke and that his son-in-law smoked Camels.

Fanny Geraldine Summerland's testimony corroborated that of her husband, Charles, that the defendants were at their home until 11:00 p. m. on March 12, 1974.

Sheila Hoff testified that on March 18, 1974, she was Myra Alexandra King's roommate; that they went to the defendants' residence and remained approximately two hours; that during the course of the visit she remembered Myra going into the bedroom to make a telephone call. She subsequently learned that the police arrived about five minutes after they left. She further testified that Myra King smoked Marlboro cigarettes.

In rebuttal, Officer McDonald testified that Myra (Sandy) King gave them information about drug dealers in return for a recommendation on their part for leniency in her case; that Sandy told them about the Barnharts and he personally kept a watch on their residence several weeks prior to March 18th. He denied telling her that she would be given credit for the "bust." He testified that he did not talk on the telephone to Sandy King on March 18th, nor did Officer Taylor; that the reliable infor-

mant set forth in the Affidavit for search warrant was not Sandy King.

In the second stage of the bifurcated trial, defendant Gale Franklin Barnhart stipulated that he was in fact convicted in 1971 of the offense of Unlawful Possession of Marijuana with Intent to Distribute.

Defendants complain of certain errors in assignments of error 1 and 2 which occurred during a trial which resulted in mistrial several months prior to the trial in the instant case. We do not deem it necessary to discuss these assignments of error inasmuch as the record clearly reflects that at the time the mistrial was declared by the trial judge that the jury had not been sworn. In *Sussman v. District Court of Oklahoma County*, Okl.Cr., 455 P.2d 724 (1969), we stated:

"This Court has, on many occasions, spelled out exactly what constitutes jeopardy; most recently in the case of *Pickens v. State*, Okl.Cr., 393 P.2d 889 (1964) as follows:

'Before jeopardy attaches, each of the following conditions must exist:

'First; the defendant must be put upon trial before a court of competent jurisdiction.

'Second; the indictment or information against the defendant must be sufficient to sustain a conviction.

'Third; the jury must have been impaneled and sworn to try the case.

'Fourth; after having been impaneled and sworn, the jury must have been unnecessarily discharged by the court.

'Fifth; such discharge of the jury must have been without the consent of the defendant.' "

We further observe that we concur with the trial court's reasoning in granting a mistrial wherein he stated:

". . . [T]hat your motion that you have made and that the District Attorney's motion, that motion that you are not in a proper and suitable frame of mind to adequately represent your clients, not through inexperience but that you have become so emotionally involved in this matter, and deliberately disregarding the admonition of the Court, time after time, that at this time, I must, in order to protect the rights of the accused, grant a mistrial; and that the jury, not having been sworn, jeopardy not having been attached. . . ."

Defendants contend, in their third assignment of error, that the trial court erred in admitting evidence of other offenses. Defendants argue that they were tried and convicted not for the single offense for which they were charged, but rather, for the cumulative offenses placed before the jury. We are of the opinion that the evidence of other offenses were properly admitted as part of the res gestae. In *Sherrill v. State*, 97 Okl.Cr. 154, 260 P.2d 418 (1953), this Court stated in the first paragraph of the Syllabus:

"As a general rule, evidence of offenses other than the one for which the defendant is on trial is not admissible, but there is an exception to the rule, which is equally well-established, that evidence of a different offense than the one charged is admissible when both offenses are so closely linked or connected as to form part of the res gestae."

Defendant Shelia Diane Barnhart asserts, in the fourth assignment of error, that the trial court erred in overruling her motion for directed verdict and motion for dismissal on the grounds of coverture. Defendant argues that there was no independent evidence showing that she had knowledge apart from her husband of the presence of the cocaine in the house. We disagree. The evidence adduced that when Officer Taylor entered the residence he observed defendant Gale Franklin Barnhart coming out of the bedroom; they proceeded into a bedroom where defendant Shelia Barnhart was sitting on the bed. Moments thereafter, he discovered a bindle of cocaine between the mattress and boxsprings of the bed. The second bindle of cocaine was found in a container on top of the refrigerator in the kitchen which common knowledge adduces is the area of the home most commonly frequented by the wife. In *O'Don-*

*nell v. State,* 73 Okl.Cr. 1, 117 P.2d 139 (1941), this Court stated:

"The question arises, just what is necessary in each individual case to rebut this presumption? The answer is, that the facts in each individual case must be considered to determine whether there has been proof to overcome the presumption. Therefore, many courts have held that the question of duress by reason of coverture is a question of fact in each individual case *and especially where there is any doubt in the matter,* and that this question should be submitted to the jury upon proper instructions. This we believe is the best rule and in harmony with the decisions heretofore cited in this court. . . ." [Emphasis added]

We, thus, conclude that the question of duress by reason of coverture was properly submitted to the jury.

■ Defendants assert, in their fifth assignment of error, that the trial court erred in denying defendants' motion for dismissal and directed verdict by reason of the showing of material representations in the Affidavit for the search warrant. Defendants argue that Myra Alexandra King was the confidential informant referred to in the Affidavit for search warrant; that her testimony at trial to the effect that she did not purchase Desoxyn in the evening hours of March 12, 1974, showed a material misrepresentation in the Affidavit. We disagree with defendants' conclusion that the evidence showed conclusively that Myra Alexandra King was the informant set forth in the Affidavit for search warrant. Ms. King testified that although Officer McDonald told her she had gotten credit for the "bust," that she did not know whether she was, in fact, the informant. Officers Taylor and McDonald both testified that Ms. King was not the informant referred to in the search warrant. We are, thus, of the opinion that the trial court did not err in denying defendants' motion for dismissal and directed verdict by reason of the showing of a material misrepresentation in the Affidavit. The jury was instructed that if they found material misrepresentations in the search warrant Affidavit, that they should find for the defendants. The jury, by their verdict, obviously found that Ms. King was not the informant.

■ Defendants further argue, under this assignment of error, that the trial court erred in denying their request to reveal the identity of the reliable informant. We again must disagree. The informant's sole connection to the case at bar was in relation to the probable cause for the issuance of the search warrant. In dealing with an identical assignment of error in *Chronister v. State,* Okl.Cr., 538 P.2d 215 (1975), we stated:

"In the present case, the trial judge did not abuse his discretion in overruling defendants's motion to compel disclosure. The informant was not present during the search of defendant's residence. His only connection to the case was in relation to the probable cause prerequisite for the issuance of the search warrant. The informant's testimony would be relevant only to the question of the identity of the person who sold the LSD to him and bears no material relationship to defendant's defense. . . ."

■ Defendants assert, in their supplemental brief, six additional assignments of error. They first maintain that the trial court erred by not instructing the jury as to the purpose of admitting the evidence of other offenses. We concur that such instruction should have been given; however, the record does not reflect that the defendants requested such instruction. In *Nubine v. State,* Okl.Cr., 506 P.2d 952 (1973), we stated:

"Defendant first asserts under this proposition that the court did not instruct the jury as to the purpose of admitting the evidence of other offenses. We need only observe that the defendant did not request such instruction and therefore, failure of the trial court to so instruct does not constitute reversible error. See *Fields v. State,* Okl.Cr., 364 P.2d 723."

■ Defendants next contend that the trial court erred in permitting Dr. Williamson to testify as an expert on the iden-

tification of controlled drugs. We have previously held that whether or not a witness is allowed to testify as an expert rests within the discretion of the trial court whose decision will not be disturbed on appeal unless it clearly appears that said discretion has been abused. See, *Box v. State,* Okl.Cr., 541 P.2d 262 (1975). The record reflects that the witness Williamson had a Ph.D. degree from Oklahoma State University in Chemistry. Further, that he was an instructor in quantitative analysis and whose major thesis was in the field of molecular spectroscopy. We, thus, conclude that the trial court did not abuse its discretion in allowing the witness to testify as an expert.

■ Defendants next assert that the trial court erred in admitting improper evidence of other crimes compounded by evidentiary harpoons. We first observe that we have previously found the evidence of other crimes to be admissible as part of the res gestae. We have carefully examined each of the alleged evidentiary harpoons and find that each falls within the rule set forth by this Court in *Wald v. State,* Okl. Cr., 513 P.2d 330 (1973), wherein we stated:

> "This Court has held in considering prejudicial statements made by police officers that unless the case is a close case, error of this nature will not be considered reversible when the evidence overwhelmingly supports the jury's verdict, and the punishment imposed by the jury apparently is not based upon a prejudiced or impassioned deliberation. *Washington v. State,* Okl.Cr., 426 P.2d 372 (1967). . . ."

■ Defendants next assert that the prosecuting attorney interjected evidentiary harpoons through improper interrogation of the witnesses. Defendants first complain of the following question propounded to Officer Taylor on cross-examination, as follows:

> "Q. Did you find a prescription bottle for cocaine?" (Tr. 110)

The record reflects that the trial court sustained defendants' objection to the question and admonished the jury to disregard the remark. In *Price v. State,* Okl.Cr., 546 P.2d 632 (1976), we stated:

> " . . . The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such nature, after considering the evidence, that the error appears to have determined the verdict. See, *Goodwin v. State,* Okl.Cr., 506 P.2d 571 (1973). . . ."

Defendants secondly complain of the cross-examination of defendant Gale Franklin Barnhart, wherein the prosecuting attorney posed the following question: "How much money did you make in 1973 selling narcotics?" (Tr. 273). The record reflects that this question was propounded in the second stage of the bifurcated trial, immediately after the following colloquy between the defendant and his attorney:

> "Q. And how much money did you make in 1973?
> "A. Just a little under twelve thousand. That's in the wrecking business and shoeing horses."

In *Webb v. State,* Okl.Cr., 546 P.2d 642 (1976), we stated:

> " . . . [P]rejudicial remarks made during the second stage of a bifurcated proceeding, after the guilty verdict has been returned, can only result in modification, if necessary, but not reversal. See *Stokes v. State,* Okl.Cr., 501 P.2d 864 (1972). . . ."

■ Defendants finally argue that the prosecuting attorney proposed a question which constituted a comment on his failure to testify in terms of calling a defense chemist, wherein he propounded the following question to Dr. Williamson:

> "Now, Doctor, these items and these substances that you and Mr. Flynt have testified to and give your opinion as to their contents, are they available to, say, a chemist that the defense would want to have examine them?" (Tr. 99)

We are of the opinion that the question was not a reference to defendants' failure to take the stand, but rather was propounded for the purpose of showing the failure of

defendants to call a material witness in their behalf. In *Bernard v. State,* Okl.Cr., 538 P.2d 1109 (1975), we stated:

" . . . It has several times been held by this Court that where a person might be a material witness in defendant's behalf, and he is not placed upon the stand by the accused, nor his absence accounted for, failure to produce him as a witness is a legitimate matter for comment in the argument of the State. See, *Hilyard v. State,* 90 Okl.Cr. 435, 214 P.2d 953 (1950)."

■ The defendants next contend that the prosecuting attorney made improper remarks during the course of the closing argument. We have carefully examined each of the alleged improper remarks and are of the opinion that the same do not constitute reversible error. In *McMullen v. State,* Okl.Cr., 548 P.2d 652 (1976), we stated:

" . . . This Court had held on numerous occasions that the right of argumentation contemplates a liberal freedom of speech, and wide range of discussion, illustration and argumentation, and counsel for the State and counsel for the defendant have the right to discuss fully from their standpoint the evidence and inferences and deductions arising therefrom. See *Pickens v. State,* Okl.Cr., 450 P.2d 837 (1969); *Harvell v. State,* Okl.Cr., 395 P.2d 331 (1964). Furthermore, it is well settled in this jurisdiction that the remarks of the prosecuting attorney, to constitute reversible error, must be grossly improper and unwarranted upon some point which may have affected defendant's rights. See, *Klinekole v. State,* Okl. Cr., 456 P.2d 623 (1969). . . ."

■ Defendants finally assert that the cumulative effect of the error denied them a fair trial. We again must disagree. A review of the entire record reflects that although defendants did not receive a perfect trial, that the error occurring during the trial did not result in a miscarriage of justice or constituted a substantial violation of defendants' constitutional or statutory rights. We further observe that the evidence of defendants' guilt is overwhelming and the punishment imposed is well within the range provided by law. The judgments and sentences are, accordingly, *AFFIRMED.*

BRETT, P. J., concurs in results.

BLISS, J., concurs.