**UNITED STATES of America**

v.

**Christopher MASKE.**

**Crim. No. 92–0132.**

United States District Court,
District of Columbia.

Apr. 6, 1993.

Thomas Connolley, Asst. U.S. Atty., Washington, DC, for plaintiff.

Robert Tucker, Public Defender Service, Washington, DC, for defendant.

### *MEMORANDUM OPINION*

THOMAS F. HOGAN, District Judge.

Pending before the Court is defendant's motion to declare provisions of 21 U.S.C. § 844 unconstitutional. Defendant argues in this motion that 21 U.S.C. § 844(a) violates equal protection and due process principles of the Fifth Amendment of the United States Constitution. Having considered the authorities, arguments and evidence presented by counsel in their briefs and during the hearing held on February 17, 1993, the Court shall deny defendant's motion.

### I. Background

On March 19, 1992, defendant was charged in a three count indictment with possession with intent to distribute five or more grams of cocaine base, possession of cannabis, and using or carrying a firearm in connection with the offense of possession with intent to distribute cocaine base. Following a four day trial before this Court on June 1–4, 1992, a jury convicted defendant of possession of

over five grams of cocaine base [1] and possession of cannabis. Defendant presently awaits sentencing before this Court.

Defendant contends that 28 U.S.C. § 844(a) [2] violates equal protection principles of the Fifth Amendment because it treats cocaine base drastically different than other controlled substances.[3] Specifically, defendant asserts that the extremely harsh penalty mandated for possession of cocaine base, as compared to that of cocaine hydrochloride, has no valid scientific or medical basis. Defendant argues that cocaine base is a drug abused primarily by African Americans and that enforcement of the mandatory minimums for cocaine base has resulted in grossly disparate treatment of African Americans. Defendant further argues that § 844(a) violates due process principles of the Fifth Amendment because it mandates a conclusive presumption of intent to distribute from the possession of five grams or more of cocaine base. The Court shall address these arguments separately.

## II. Discussion

### A. Equal Protection Claim

Defendant presents three main arguments to support his equal protection claim. First, defendant argues that the Court should apply a "strict scrutiny" standard to the classification embodied in § 844(a). Alternatively, defendant argues that the Court should subject the classification to an intermediate level

of review, similar to the standard applied by the Minnesota Supreme Court in *State v. Russell,* 477 N.W.2d 886 (Minn.1991). Finally, defendant argues that even if the Court subjects § 844(a) to a rational basis test, the statutory provision cannot withstand scrutiny under the Equal Protection Clause.

In response, the government argues that defendant's evidence does not prove his disparate impact theory of race-based cocaine usage. Additionally, the government argues that the Court should not apply any heightened level of scrutiny to § 844(a) because the defendant has made no claim that Congress acted with discriminatory intent in enacting § 844(a), or that the Sentencing Commission acted with discriminatory intent in formulating the Guidelines.

Numerous federal courts have considered equal protection challenges to 21 U.S.C. § 841(b)(1), a penalty provision which applies to the offense of possession with intent to distribute cocaine base.[4] These courts consistently have applied a rational basis test and have held that the disparity in treatment between cocaine base and cocaine powder mandated by § 841(b)(1) does not violate the Equal Protection Clause of the Fifth Amendment. The Minnesota Supreme Court is the only court, of which this Court is aware, that has applied a heightened level of scrutiny to invalidate a similar statute.

In *State v. Russell,* 477 N.W.2d 886 (Minn. 1991), a defendant who had been convicted of

---

1. The jury indicated in a special verdict form that the defendant possessed 6.345 grams of cocaine.

2. In 1988, Congress amended 21 U.S.C. § 844(a) with respect to one substance, cocaine base. The 1988 amendment provides that a first-time offender found guilty of possession of cocaine base in excess of five grams is to be sentenced to a minimum mandatory sentence of five years incarceration. *See* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 100–690, § 6371. Prior to 1988, possession of a controlled substance by an individual with no prior drug related convictions was punishable by a maximum of one year imprisonment, regardless of the nature or amount of the substance. *See* Anti–Drug Abuse Act, Pub.L. No. 99–570, § 1002.

3. It is undisputed that the Sentencing Guidelines treat those convicted of possession of more than five grams of cocaine base differently than those convicted of possession of any other controlled

substance, particularly cocaine hydrochloride. For example, in defendant's case, possession of 6.345 grams of cocaine yields a base offense level of 26 with a corresponding guideline range of 63–78 months imprisonment and a mandatory minimum sentence of five years. Possession of a like amount of cocaine powder would yield a maximum sentence of one year incarceration.

4. *See, e.g., United States v. Harding,* 971 F.2d 410 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993); *United States v. Lawrence,* 951 F.2d 751, 755 (7th Cir. 1991); *United States v. House,* 939 F.2d 659, 664 (8th Cir.1991); *United States v. Avant,* 907 F.2d 623, 627 (6th Cir.1990); *United States v. Thomas,* 900 F.2d 37, 39–40 (4th Cir.1990); *United States v. Cyrus,* 890 F.2d 1245, 1248–49 (D.C.Cir.1989); *United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988).

possession of cocaine base with intent to distribute challenged a Minnesota statute which imposed a greater penalty schedule for cocaine base than for cocaine powder. The defendant argued that the classification drawn by the statute violated equal protection provisions of the Minnesota Constitution and the United States Constitution. Applying an intermediate level of review, the Minnesota Supreme Court held the statute unconstitutional under the Minnesota Constitution. *Id.* at 889. In so doing, the Court rejected the government's assertions that the distinction between cocaine base and cocaine powder facilitated the prosecution of street level dealers and that such disparate treatment was necessary because of the allegedly more addictive and dangerous nature of cocaine base. *Id.* at 889–91.

Federal courts which have considered equal protection challenges subsequent to *Russell* have declined to follow the Minnesota Supreme Court. *See, e.g., U.S. v. Willis,* 967 F.2d 1220 (8th Cir.1992); *U.S. v. Watson,* 953 F.2d 895, 898 n. 5 (5th Cir.1992) (declining to follow *Russell* and noting that the rational basis test under the Minnesota Constitution is more stringent than its federal counterpart). Most recently, the Ninth Circuit addressed the equal protection issue in *United States v. Harding,* 971 F.2d 410 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993). In *Harding,* the Ninth Circuit applied a rational basis test to § 841(b)(1) and upheld the statute under the Equal Protection Clause. The Court expressly rejected the defendant's argument that the distinction between cocaine base and cocaine powder embodied in § 841(b)(1) is arbitrary and irrational. *Id.* at 412. The court stated, "[a]lthough crack and powder cocaine are different forms of the same drug, the routes of administration, their physiological and psychological effects, and the manner in which they are sold set the two forms of the drug apart." *Id.* at 413. After reviewing the statute's legislative history, the court concluded that Congress' decision to punish the sale of crack cocaine more severely than the sale of powder cocaine was based on a "broad and legitimate basis." *Id.* at 413.

This Circuit has also rejected the argument that Congress' decision to distinguish between cocaine powder and cocaine base in § 841(b)(1) is "arbitrary and irrational." *See United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989). In *Cyrus,* the D.C. Circuit asserted:

> Crack is far more addictive than cocaine. It is far more accessible due to its relatively low cost. And it has experienced an explosion of popularity.... Any one of these factors would furnish a rational basis for the distinction.

*Id.* at 1248.

Defendant attempts to distinguish his case from the prior cases on two primary grounds. First, defendant points out that other courts which have considered similar equal protection challenges have addressed whether the disparity in the sentence for possession with intent to distribute cocaine base, as opposed to mere possession, violates the Equal Protection Clause. Second, defendant asserts that these courts did not have the benefit of a full evidentiary record when they considered the properties of crack and powder cocaine and the disproportionate impact of the distinction on African Americans. For example, defendant cites *United States v. Simmons,* 964 F.2d 763 (8th Cir.1992), where the defendant alleged that 97% of those prosecuted for crack offenses in the Western District of Missouri were black. In *Simmons,* the Eighth Circuit stated, "[w]ere we writing from a clean slate, however, we might accept as valid appellants' contentions relating to the disproportionate penalty." *Id.* at 767. *See also United States v. Willis,* 967 F.2d 1220, 1225 (8th Cir.1992) (rejecting equal protection challenge to § 841(b) although Hennepin County (Minneapolis) statistics revealed that blacks accounted for 100% of those sentenced for possession of crack, but only 27% of those sentenced for possession of cocaine powder). Before deciding the appropriate level of scrutiny to apply to § 844(a), the Court shall review the evidentiary record before it.

### 1. Evidentiary Record

On February 17, 1993, this Court held an evidentiary hearing on defendant's motion. To support his disparate impact theory of

race-based cocaine use, defendant called to testify Dr. Richard Seltzer, a Howard University Professor of Political Science and expert in statistical analysis, and Dr. George Schwartz, an expert in the field of emergency medicine and drug treatment.

Dr. Seltzer's testimony focused on data which defendant obtained from the United States Sentencing Commission[5] and various statistical charts generated from the data. For instance, one of the charts broke down by race the number and percentage of defendants convicted in the district courts of the United States[6] for both trafficking and possession offenses involving cocaine hydrochloride and cocaine base during October 1, 1991, and September 30, 1992.[7] This chart revealed that for trafficking offenses involving cocaine base, 91.3% of those convicted were black, while only 4.1% were white. In contrast, 38.3% of those convicted of trafficking offenses involving powder cocaine were white, as opposed to 27.7% black. Similarly, another chart showed that 88.2% of those convicted of possession involving cocaine base were black, while only 8.8% were white.[8] Again, in contrast, 49.7% of those convicted of possession involving cocaine powder were white, as opposed to 29.9% black.

A separate chart revealed that 97% of the white individuals who had been convicted of cocaine trafficking were convicted of trafficking in cocaine powder, as opposed to cocaine base. Conversely, 54% of the black individuals who had been convicted of cocaine trafficking were convicted of trafficking in cocaine base. The data also demonstrated that 93% of the white individuals who had been convicted of possession of cocaine were convicted of possession of cocaine powder, while 55% of the blacks who had been convicted of cocaine possession were convicted of possession of cocaine base.

Another chart showed that out of 6348 individuals, the percentage of whites versus blacks involved in the distribution of cocaine, crack and powder, was 60% to 40%. The chart revealed in absolute numbers the following ratios: (a) between October 1, 1991, and September 30, 1992, 2057 blacks and 88 whites (a ratio of 23:1) were convicted of distribution of crack cocaine; (b) 60 blacks and 6 whites were convicted of possession of crack (a ratio of 10:1); (c) 1770 blacks and 2433 whites were convicted of distribution of cocaine powder (a ratio of 1:1.3); (d) 50 blacks and 83 whites were convicted of possession of cocaine powder (a ratio of 1:1.7); (e) 3937 blacks and 2610 whites were convicted of cocaine offenses in general (a ration of 3:2).

The government argues that the Court should accord limited weight to defendant's study because it did not take into account various outside factors which could have altered the results.[9] For example, the study did not consider that crack is frequently sold in open area drug markets and that citizen complaints often lead to crack arrests. Additionally, the government argues that the data used to create the charts was deficient because it only covered a one-year period.

The testimony of Dr. Schwartz provided additional support for defendant's race-based theory. Dr. Schwartz testified that cocaine powder is a much more dangerous drug than crack. According to Dr. Schwartz, three

---

5. The defendant obtained information on the defendants' drug types and races from presentence reports.

6. Because the government had argued that data from the District of Columbia would be unreliable due to the population demographics of the District, defendant intentionally excluded such data from his study.

7. This chart included all Guideline drug offenses. Of the 16,121 guideline cases, 550 were excluded due to missing race.

8. This chart also broke down by race the number and percentage of defendants convicted in the

district courts of the United States for simple possession of cocaine hydrochloride and cocaine base between October 1, 1991, and September 30, 1992. The chart included all Guideline simple possession drug offenses. Of the 841 guideline cases, 28 were excluded due to missing race.

9. Defendant's statistical study was not as sophisticated as the study performed by Professor David C. Baldus in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). The Baldus study examined over 2000 murder cases in Georgia and took into account over 230 variables that could have explained the disparity in the imposition of the death penalty on nonracial grounds. 481 U.S. at 286, 107 S.Ct. at 1764.

times as many deaths are reported from the intranasal use of cocaine hydrochloride, as opposed to the ingestion of cocaine base or the intravenous injection of cocaine hydrochloride. Dr. Schwartz surmised that the difference is due to the sustained level that an individual gets from ingestion from snorting as opposed to the rapid rise and fall that comes through the intravenous or pulmonary, i.e. smoking, method of injection. Dr. Schwartz also stated that he considers cocaine hydrochloride to be a more dangerous drug than cocaine base because of the 40% incidence of AIDS that has been found in individuals who intravenously inject cocaine.

During his testimony, Dr. Schwartz made the following conclusions. First, Dr. Schwartz concluded that there is no valid medical or scientific basis for the disparity in penalties between cocaine base and powder. Second, Dr. Schwartz concluded that there is no rational basis for distinguishing between cocaine powder and crack cocaine in terms of the addictive potential of these drugs. Although Dr. Schwartz conceded that it is possible that crack may have the potential for greater psychological addiction than cocaine, Dr. Schwartz asserted that to his expert knowledge, there is no objective scientific data which supports the conclusion that crack cocaine is more physically addictive than cocaine powder.

Having reviewed the entire record before it, the Court shall first determine the relevant level of scrutiny, and then apply it to the facts of this case.

### 2. Level of Scrutiny

For equal protection challenges, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate [government] inter-est." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted). However, when a statutory classification disadvantages a suspect class or impinges upon the exercise of a fundamental right, a legislative classification must further a compelling governmental interest to withstand constitutional review. *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982).

Section 844(a) implicates neither a suspect class nor a fundamental right. Defendant has presented evidence which clearly demonstrates that the mandatory minimums imposed for possession and distribution of cocaine base have had a disproportionate impact on African Americans. However, " '[disproportionate impact] is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' " *Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1979) (quoting *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976) (citations omitted)). Defendant's evidence does not establish "that Congress enacted the more severe crack penalties, or allowed them to remain in effect, 'to further a racially discriminatory purpose.' " *United States v. Willis*, 967 F.2d at 1225 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 298, 107 S.Ct. 1756, 1770, 95 L.Ed.2d 262 (1987)).[10] Therefore, the Court declines to apply any level of heightened scrutiny to § 844(a). The Court finds that § 844(a), like § 841(b)(1), permissibly differentiates on the basis of drug type and quantity, providing higher penalties for possession of over five grams of cocaine base than for possession of the same amount of powder cocaine. This

10. Defendant asserts that various statements made by Congressmen during debates on the Anti–Drug Abuse Act of 1986 establish that Congress was aware of the substantial negative impact that mandatory minimums would have on minorities. Defendant argues that these statements constitute evidence that Congress acted with discriminatory intent when it enacted the 1986 Act and the 1988 amendment. The Court rejects this argument. The Supreme Court has stated, "discriminatory purpose ... implies more than intent as volition or intent as awareness of the consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *McCleskey*, 481 U.S. at 299, 107 S.Ct. at 1770 (quoting *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)) (footnote and quotations omitted).

holding is consistent with other federal cases which have considered similar equal protection challenges. *See, e.g.,* n. 4 *supra.* With the exception of *State v. Russell,* which was decided under the Minnesota Constitution, courts consistently have applied a rational basis test to statutory provisions that distinguish between cocaine base and cocaine powder for purposes of sentencing.

### 3. Rational Basis Review

■ Defendant contends that the legislative history behind the 1988 amendment to § 844(a) clearly indicates that Congress designed the mandatory five year provision to make it harder for dealers to avoid the mandatory five year penalty of § 841(b)(1) by carrying less than five grams while distributing.[11] In particular, defendant argues that a mandatory five year minimum penalty for a first time offender with more than five grams is logically incompatible with the "stated purpose" of the 1988 amendment.[12] Additionally, defendant maintains that the testimony presented by Dr. Seltzer and Dr. Schwartz "make[s] clear that the government's rationale has no basis in fact" and that the relationship of the classification in § 844(a) to its asserted goal "is so attenuated as to render the distinction arbitrary [and] irrational." *City of Cleburne,* 473 U.S. at 446, 105 S.Ct. at 3257. Defendant claims that § 844(a) irrationally distinguishes between individuals who possess more than five grams of cocaine base and the following groups:

1. those who possess, without intent to distribute, any quantity of any other controlled substance;
2. those who possess, without intent to distribute, any amount of cocaine powder;
3. those who possess, with intent to distribute, less than 5 grams of cocaine base;
4. those who possess, with intent to distribute, more than 5 grams of cocaine base.
5. those who possess less than five grams of cocaine base.

The Court agrees that § 844(a) does not further the "stated purpose" of making it harder for dealers who carry less than five grams of cocaine base to avoid the mandatory five year penalty under § 841(b)(1). However, when applying a rational basis test, the Court is mindful of its duty to exercise deference to Congress' judgment. "A legislative body need not explicitly state its reason for passing legislation so long as a court can divine some rational purpose." *United States v. Cyrus,* 890 F.2d at 1248. The Court finds that rational and legitimate governmental purposes other than the "stated purpose" justify the five gram distinction drawn by § 844(a).[13] The legislative history of the statute reveals that Congress considered crack to be more addictive, more affordable and more prevalent than cocaine powder. Congress was particularly concerned with crack's easy accessibility. Additionally, courts have held that Congress' market-oriented sentencing approach, which results in

11. To support this interpretation, defendant cites a statement made by Representative Shaw of Florida, the sponsor of the 1988 amendment. During a congressional debate, Representative Shaw asserted that the mandatory five year provision contained in § 844(a) was designed to make it harder for crack dealers to avoid the mandatory five year penalty of § 841(b)(1) by carrying less than five grams while distributing. 134 Cong.Rec. H7704 (daily ed., Sept. 16, 1988). Defendant also cites a Justice Department memorandum which Representative Hughes of New Jersey read during the same congressional debate. *Id.* The Justice Department opposed the 1988 amendment on the grounds that it would prevent the Department from charging those who possess under five grams of crack for trafficking offenses, as it presently was doing. The Department feared that first time offenders who possessed less than five grams of crack would argue that they possessed the crack for personal use.

12. Defendant points out that the "stated purpose" of the mandatory five year provision could not apply to individuals who possess five grams or more of crack because such individuals obviously would not be trying to avoid the five gram minimum covered by § 841(b)(1).

13. A review of the legislative history reveals that members of Congress asserted additional rationales behind enacting the 1988 amendment to § 844(a). For instance, Representative Shaw referred to crack's addictiveness. 134 Cong.Rec. H7704 (daily ed., Sept. 16, 1988). Representative Lagomarsino referred to crack's lethal effect upon users, its availability, its low cost, and its "spreading like the plague." *Id.* Representative Hunter expressed support for the amendment because it would establish a deterrent and would actually affect the demand side. *Id.*

100–to–1 cocaine base to cocaine powder sentencing ratio, provides further rational basis for the distinction drawn between cocaine base and cocaine powder.[14] Because crack is prepared in concentrated doses, it magnifies the effect of one gram of cocaine to such a degree that dealers can sell very potent doses cheaply.

Although Dr. Schwartz's testimony disputes the accuracy some of these purposes,[15] defendant has not demonstrated that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979). The Court cannot conclude that the distinction § 844(a) draws between possession of more than five grams of crack and possession of any amount of cocaine powder or other controlled substance has no rational basis. Therefore, it rejects defendant's equal protection challenge to § 844(a) and the Sentencing Guidelines. *See United States v. Harding,* 971 F.2d at 414 ("If the extent of the problem posed by the sale of crack and the need for more severe penalties than for powder cocaine are not clearly evident, these issues are at least highly debatable. This is enough to prevent invalidation of the statutory classification.") (citing *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)). In reaching this conclusion, the Court determines only that Congress' judgment is rational, not necessarily correct.

### B. *Due Process Claim*

■ The 1988 amendment to § 844(a) mandates that a first-time offender who is convicted of possession of cocaine base must be punished almost identically to a person who is convicted of possession of over five grams of cocaine base with intent to distribute. In both cases, the individual is to be sentenced to a minimum mandatory sentence of five years incarceration.[16]

Defendant argues that the 1988 amendment violates due process principles of the Fifth Amendment because it mandates an irrefutable presumption of intent to distribute from the possession of five grams or more of cocaine base. Defendant asserts that when Congress amended § 844(a) to provide for a minimum mandatory sentence of five years for a first offender who possesses over five grams of cocaine base, it established a conclusive presumption, based on weight, that an individual who possesses in excess of five grams necessarily intends to distribute cocaine base. Defendant contends that this presumption is irrebuttable by evidence to the contrary and cannot be affected by a jury determination that the defendant did not possess the cocaine base with intent to distribute. Defendant points out that in the present case, the Court specifically instructed the jury that:

> the specific intent to distribute cocaine base may be inferred from possession of a quantity of cocaine base. However, you are not required to make this inference. . . .

An instruction that the jury was to presume intent to distribute from the weight of the drugs clearly would have been improper. Defendant argues that, in effect, § 844(a) establishes such a conclusive presumption by mandating the same mandatory minimum for these offenses.[17]

---

**14.** *See e.g., U.S. v. Thomas,* 932 F.2d 1085, 1090 (5th Cir.1991); *U.S. v. Malone,* 886 F.2d 1162, 1166 (9th Cir.1989).

**15.** For example, Dr. Schwartz contested significant portions of the testimony offered by Dr. Robert Byck during the "Crack" Hearings. *See* "Crack" Cocaine: Hearing Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 99th Cong., 2d Sess. 13, *et seq.* (1986). *See also United States v. Butner,* 894 F.2d 975 (8th Cir. 1990) (quoting Dr. Byck's testimony). Dr. Schwartz expressly questioned remarks Dr. Byck

made about crack's dangerous and addictive nature.

**16.** Although the minimum mandatory for these offenses is the same, potential punishments under these statutory provisions are not identical. A defendant convicted of possession with intent to distribute five grams or more of crack faces a maximum sentence of 40 years, while a defendant convicted of possession of that amount faces a maximum sentence of 20 years.

**17.** The Minnesota Supreme Court accepted this argument in *Russell.* The *Russell* court stated

**158**

The Circuit has rejected a due process challenge similar to that advanced here. In *United States v. Holland*, 810 F.2d 1215 (D.C.Cir.1987), this Circuit considered whether 21 U.S.C. § 845(a), which enhances the penalty for conviction under § 841 if a defendant is found to have distributed a controlled substance within 1000 feet of a school, creates a presumption of guilt. The court recognized that a conclusive presumption of proof of an element of a crime from evidence of an ancillary fact would violate the Due Process Clause. *Id.* at 1220 (citing *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). The court also acknowledged that an irrebuttable presumption that may be contrary to verifiable facts would violate the Due Process Clause. *Id.* at 1222 (citing *Cleveland Board of Education v. LaFluer*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *United States Dep't of Agriculture v. Murray*, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973)). However, the court found the presumption of fact to which the defendant referred, " 'that the perpetrator is deserving of substantially greater punishment than would ordinarily be tolerated,' to be one already decided by Congress as a matter of law." *Id.* at 1221; *see also McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (upholding constitutionality of § 9712 of Pennsylvania's Mandatory Minimum Sentencing Act).

This Court finds that § 844(a), like § 845(a), does not allow the trier of fact to predicate guilt on a set of facts presumed from another set of facts proved. Section 844(a) does not create a "fact upon fact" presumption of intent to distribute from possession of greater than five grams of cocaine base. Rather, § 844(a) represents a deter-mination by Congress that those who possess crack cocaine in excess of five grams deserve a stiff punishment. Therefore, consistent with other circuits' rulings,[18] the Court holds that Congress' enactment of similar penalties for possession and distribution of greater than five grams of cocaine base evinces a rational purpose and does not violate the Due Process Clause.

### III. Conclusion

Having considered the authorities and arguments presented by counsel in their briefs and during oral argument on February 17, 1993, the Court shall deny defendant's motion. It is hoped that Congress and the Sentencing Commission will address the troubling statistics revealed herein and propose an appropriate solution.

that the Minnesota legislature could not attempt to eradicate "street level" drug dealing by establishing a mandatory presumption of intent to distribute. The court concluded, "[b]ecause the statute creates an irrebuttable presumption of intent to sell without affording the defendant an affirmative defense of lack of intent to sell, and on the basis of that presumption automatically metes out a harsher punishment, the means chosen to effect its purposes are constitutionally suspect." 477 N.W.2d at 891.

**18.** *See United States v. Lawrence*, 951 F.2d 751 (7th Cir.1991) (holding that Congress' enactment of different penalties for possession with intent to distribute cocaine base and cocaine powder does not violate due process); *see also United States v. Pickett*, 941 F.2d 411, 418 (6th Cir.1991) (concluding that Sentencing Guidelines rule that illegal possession of one gram of crack cocaine is equivalent for sentencing to 100 grams of cocaine powder does not violate due process).