Danny Otis McCLENDON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–201.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1988.

James A. Clark, Ardmore, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Danny Otis McClendon, appellant, was tried by jury for the crime of Murder in the Second Degree in violation of 21 O.S.1981, § 701.8, in Case No. CRF–86–247 in the District Court of Carter County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at thirty (30) years imprisonment. The trial court sentenced appellant in accordance with the jury's verdict. From this judgment and sentence, appellant appeals to this Court.

Insomuch as this case must be reversed, we deem a recitation of the facts unnecessary.

The first trial in this matter was held on May 13th and 14th, 1987. On May 14, the bailiff informed the court that she had been approached by Juror Buck who was concerned that he recognized a female spectator in the courtroom. Juror Buck suspected that the spectator might be the sister of the appellant. He informed the bailiff of his concern that his aquaintanceship with her could affect his impartiality. Juror Buck was summoned to the chambers where he was questioned by the trial judge and defense counsel. During the discussion, it was never confirmed that the spectator was in fact the sister of the appellant. After a short recess, the trial judge declared a mistrial, stating that he had "a sufficient doubt about the integrity of the fact-finding process ..." Appellant subsequently filed a Motion to Dismiss the Information, which was overruled. On August 19th, 1987, appellant was re-tried and convicted for Murder in the Second Degree.

■ Appellant asserts that the trial court erred in declaring a mistrial and that he was twice placed in jeopardy for the same offense. We agree. In *Bennett v. Shumate*, 586 P.2d 333 (Okl.Cr.App.1978), this Court adopted the "manifest necessity" test to determine whether a defendant has been subjected to double jeopardy. The trial court is vested with the discretion to discharge a jury and declare a mistrial whenever there is a manifest necessity. See *Koehler v. State*, 721 P.2d 426 (Okl.Cr. App.1986).

Relevant portions of the voir dire in the judge's chambers reveals the following:

Q: [trial judge]: assume that your suspicion is correct, and I don't know who she is.

A: [juror Buck]: yeah.

Q: Is that going to make any difference in the way you would decide this case?

A: I—no, I don't think—you know, it's—it would be in my mind, you know. I don't think it would affect it. It's hard really, but—

Q: I don't want to put words in your mouth, but I assume that if it turned out, whoever this person is, is not the sister of the defendant, its not going to make any difference, or is it? In other words, if she's just a spectator, she just came up to watch what's going on—

A: uh-huh. I don't know—no, I don't think it would bother me.

Q: If it turned out that she is the sister of the alleged victim, would it make any difference?

A: No. Sir. (Tr. 5).

Q: Do you feel like that you will be able to decide this case based on the evidence that's presented to you and exclude from your decision-making process your acquaintanceship with this lady and her family?

A: I think so, yes sir. (Tr. 7).

Q: [defense counsel] Are you even convinced right now that she is the defendant's sister?

A: No, Sir. (Tr. 9)

After Juror Buck had been excused, neither the State nor the defense moved for a mistrial. A short recess was had and then over the appellant's objection, the court declared a mistrial. Having reviewed the record, we cannot say that Juror Buck demonstrated such bias as to warrant a mistrial. Juror Buck stated that he could decide the case based on the evidence presented at trial. Moreover, it is readily apparent that if any side would have been prejudiced by Juror Buck's presence on the jury, it would have been the State. However, the State did not make a motion for a mistrial. Based on the record before us, we find that the declaration of a mistrial was not a "manifest necessity." Appellant's retrial was barred by the double jeopardy clause of both our State and federal constitutions.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is REVERSED and REMANDED with instructions to DISMISS.

BRETT, P.J., and PARKS, J., concur.