2010 OK CR 2

**Michael David RANDOLPH, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2008–208.

Court of Criminal Appeals of Oklahoma.

Feb. 4, 2010.

Curt Allen, Jill Webb, Tulsa, OK, attorneys for defendant at trial.

Courtney Smith, Assistant District Attorney, Tulsa, OK, attorney for the State at trial.

Stuart W. Southerland, Tulsa, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General, Keeley L. Harris, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

LEWIS, Judge.

¶ 1 Michael David Randolph, Appellant, was tried by jury and found guilty in the District Court of Tulsa County, Case No. CF–2007–1661, of Count 1, trafficking in illegal drugs, after former conviction of two (2) or more felonies, in violation of 63 O.S.Supp. 2004, § 2–415; Count 2, possession of marijuana, second offense, after former conviction of one (1) or more felonies, in violation of 63 O.S.Supp.2004, § 2–402; and Count 3, failure to obtain a drug tax stamp, after former conviction of two (2) or more felonies, in violation of 68 O.S.2001, § 450.3. The jury sentenced Appellant to life without parole and a $25,000 fine on Count 1, two (2) years imprisonment and a $1,000 fine on Count 2, and four (4) years imprisonment and a $1,000 ·fine on Count 3. The Honorable Jesse S. Harris, District Judge, pronounced judgment and sentence in accordance with the jury's verdict and ordered that the sentences on Counts 1 and 2 be served concurrently, but consecutively to Count 3. Mr. Randolph appeals.

### FACTS

¶ 2 In March, 2007, Tulsa police officers Ludwig and Beaty received information that someone was dealing drugs to a pregnant black female at a particular apartment in Tulsa. In response to that information, the officers initiated an investigation of an apartment on East Fifth Place. They arrived at the residence around 6:00 p.m. on March 22, 2007. The officers knocked on the apartment door. A man later identified as Robert Benson answered. The officers, who were dressed in police uniforms, told Benson the reason for their visit and asked if they could enter the apartment. Benson stepped to the side and told them to "Come on in."

¶ 3 Upon entering the living room, both officers saw Appellant standing in a doorway to a bedroom down the hallway of the apartment. When Appellant saw the officers, he turned and walked quickly out of sight. The officers became suspicious and followed him. As Officer Ludwig entered the room, he saw Appellant standing partially turned to his left and facing away from the door, cupping a clear plastic baggie containing a leafy green substance in his left hand. Officer Ludwig also saw a pregnant black female in the room, dressed in a towel and just out of the shower. Officer Ludwig seized the baggie, handed it to Officer Beaty, and arrested Appellant for possession of marijuana. As he was being handcuffed, Appellant complained to the officers that he "just wanted to roll a blunt."

¶ 4 The officers removed Appellant from the bedroom and searched his clothing, finding $77 in his pocket. Officer Ludwig testified that he requested consent to search the apartment from Robert Benson. Officer Beaty filled out the search warrant waiver and consent form, which Officer Ludwig explained and presented to .Benson. Benson executed the form. As a witness for the

Appellant at trial, Robert Benson gave a conflicting account of these events. He testified that the officers asked him some questions when he opened the door, but did not ask if they could come inside. Benson stated that while the officers were still outside, he asked if they had a search warrant. The officers then pushed open the door, handcuffed him and the female in the apartment, and then went into the back bedroom where Appellant was. Benson also said that he only signed the search waiver because the officers threatened he would go to jail if he didn't.

¶ 5 After arresting the Appellant, Officers Ludwig and Beaty transported him to Tulsa's Uniform Division North station. At the station, Appellant expressed interest in becoming a confidential informant. During this discussion, Appellant also asked to go to the restroom. As both officers escorted Appellant down the hall, they noticed him walking with a pronounced limp. Appellant had walked with a limp from the patrol car into the police station, but had not done so earlier at the apartment.

¶ 6 Appellant's handcuffs were removed in the restroom. As Appellant walked to the urinal, the officers saw a small plastic baggie fall from the bottom of his left shorts leg. Appellant quickly picked it up and began to shove it into his pocket. Officer Ludwig immediately re-handcuffed him and retrieved a clear baggie containing what proved to be cocaine base. There was no tax stamp on the item. A Tulsa Police Department forensic scientist testified that the cocaine base weighed approximately 8.52 grams, a trafficking quantity of crack cocaine.

### ANALYSIS

■ ¶ 7 In his first proposition of error, Appellant claims the trial of this case was barred by former jeopardy, violating his rights under Article II, section 21 of the Oklahoma Constitution and the Fifth Amendment to the United States Constitution. Appellant did not plead in the court below that he was formerly convicted or acquitted of these crimes by the verdict of a jury. 22 O.S.2001, §§ 14, 513. He rests this claim on the fact that the district court declared a

mistrial over his objection and discharged a previous jury sworn to try the case. When Appellant was brought before the district court for re-trial, he moved to dismiss the charges on grounds of former jeopardy. The district court denied the motion. Appellant preserved the issue for review. *Harris v. State,* 1989 OK CR 34, 777 P.2d 1359; *Sussman v. The District Court of Oklahoma County,* 1969 OK CR 185, 455 P.2d 724 (granting pre-trial writ of prohibition); *Barnhart v. State,* 1977 OK CR 18, 559 P.2d 451 (reviewing former jeopardy claim following subsequent trial).

¶ 8 In *Loyd v. State,* 1911 OK CR 255, 6 Okla.Crim. 76, 116 P. 959, Judge Furman set out the essential facts which determine whether a discharge of the trial jury operates as an acquittal:

First. The defendant must be put upon trial before a court of competent jurisdiction. Second. The information or indictment against the defendant must be sufficient to sustain a conviction. Third. The jury must have been impaneled and sworn to try the case. Fourth. After having been so impaneled and sworn to try the case the jury must have been unnecessarily discharged. Fifth. That such discharge of the jury must have been without the consent of the defendant. When those things all occur, then the discharge of a jury operates as an acquittal of the defendant.

*Loyd,* 6 Okla.Crim. at 84, 116 P. at 962. This Court has applied these principles in such cases since statehood. *Pickens v. State,* 1964 OK CR 10, 393 P.2d 889; *Painter v. Martin,* 1974 OK CR 231, 531 P.2d 341.

■ ¶ 9 Four of the requirements for acquittal by discharge of the jury are undisputed here. Only the question of manifest necessity remains. In *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), Justice Story wrote:

[T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, *in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to

exercise a *sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere* ... (emphasis added).

This Court has likewise stated that the district courts

necessarily must have a discretion in the matter of determining the necessity for the discharge of the jury, but such court cannot act arbitrarily or capriciously, and unless the facts upon which the court based its judgment are entered of record, this court is unable to determine whether the action of the court was arbitrary or capricious, or in accordance with justice.

*Yarbrough v. State,* 1949 OK CR 100, 90 Okla.Crim. 74, 82, 210 P.2d 375, 379. Whether a district court grants a mistrial and discharges the jury upon a party's motion or *sua sponte,* we review the decision for abuse of discretion, *Knighton v. State,* 1996 OK CR 2, ¶ 64, 912 P.2d 878, 894, which is shown only when the ruling "is clearly made outside the law or facts of the case." *Id.*

¶ 10 During the previous trial of these offenses, the prosecution's first police officer witness identified the substance Appellant was cupping in his hand as marijuana. When defense counsel objected to the lack of foundation, the court sustained the objection and admonished the jury. The State then laid an adequate foundation and the officer identified the substance without objection. The same officer then identified the substance that fell from Appellant's clothing as crack cocaine. Defense counsel again objected. The court sustained the objection and admonished the jury to disregard the evidence. The court then offered defense counsel a mistrial, which he declined. Defense counsel requested instead that the whole of the officer's testimony be excluded, which the district court refused. The court cautioned the veteran officer that he was not to inject prejudicial information into the trial, and if it happened again, the court would order a mistrial.

¶ 11 During the State's direct examination of the second police officer, while being questioned briefly by the court, the witness testified before the jury that Appellant's offer to do some work for police meant he was offering "to set up another drug dealer." Defense counsel again approached the bench and objected. The court agreed the comment was improper, and asked counsel whether he was requesting a mistrial. After consulting with Appellant, defense counsel again declined a mistrial. Defense counsel instead requested that the court instruct the jury that the witness had injected evidentiary harpoons. The district court refused to instruct the jury as requested. The following then transpired:

The Court: What the man said was another drug dealer. That suggests this man is a drug dealer. I believe that's why you're objecting, Mr. Allen?

Defense Counsel: It is, your Honor.

Prosecutor: Your Honor, only—the only thing that I would go back to the first element of a drug tax stamp.

The Court: That may be, but the jury has to decide whether or not this man is a drug dealer.

Prosecutor: I understand.

The Court: To just tell them that he is, is improper. Objection—o which I sustained the objection. And my problem is, quite frankly, this is a third evidentiary harpoon. They got this man [the officer] calling the man a drug dealer; we have another guy take the witness stand [sic] say something is cocaine without a laboratory analysis; and also he offers his opinion that its marijuana. We have what I consider here to be a collection of errors. I'm going to declare a mistrial on my own motion. This case—would be reversed on appeal. There is no—makes no sense to continue to go through this exercise in futility when I know the man hasn't received a fair trial. And if the man's found guilty and sent to the penitentiary and the case is sent back, it makes no sense to continue going on with this. We have a veteran police officer of 12 years who knows better than to inject an evidentiary harpoon in the case, not once, but twice. Now we have a less experienced officer—his testimony alone was not grounds for mistrial, but combined with the other two errors, I can't, in good conscience, send this case forward when I believe it's going to be reversed. It makes

no sense to continue. What do you say, Mr. Allen? I'm guessing the reason you objected was because you felt like these things were wrong.

Defense Counsel: Yes, sir.

The Court: I've overruled [sic] your objections. And with the accumulation of errors, it's my belief that this will be reversed if your guy's found guilty. We're not doing this just for practice. And even though you may want to waive these errors, I'm certain that if he's found guilty on appeal, some appeal attorney is not going to waive these errors.

Defense Counsel: I expect they would not, Judge.

The Court: We wind up just doing this for practice. That is not a good use of your time, Counselors, or mine, or this jury's. And it's certainly not good use of the defendant's time to go down and sit in the penitentiary, if he's found guilty, with my knowing, or at least feeling reasonably sure that this case will be reversed and tried again given the collection of errors. All right. I'll declare a mistrial.

¶ 12 When Appellant later moved to dismiss the charges based on former jeopardy, the district court again explained its rationale and purpose in discharging the jury:

The Court: The defendant now makes a Motion to Dismiss again based on double jeopardy because the Court determined that there were evidentiary harpoons that were made by not one but two witnesses, as I recall. . . . And it was the Court's decision to complete the trial would guarantee a mistrial. So rather than wasting the Court's time and court resources, the Court determined over the defendant's objection, to declare a mistrial, since the case was obviously tried erroneously, at least in my opinion. . . . I'm going to deny your Motion to Dismiss for double jeopardy. Counselor, what I was trying to do was give your client a fair trial. And it was my determination that based upon the testimony that was elicited by the State, that your client's rights were prejudiced. In order to protect him from getting a huge sentence and being sent to the penitentiary for a very long time and having to appeal it

and sit in the penitentiary for a number of years before his appeal was successful, which I anticipated it would be, I was trying to save him some time. That is not double jeopardy. Deny your request.

¶ 13 In an unusual reversal of rhetoric, appellate counsel now argues, with singular dexterity, that the errors to which Appellant objected at his first trial (and which objections provoked the district court to declare the mistrial) were not *errors* at all, or were "clearly harmless" errors. From this, he reasons inexorably that discharging the jury was an unnecessary act amounting to acquittal. The Attorney General, uncharacteristically, counters that the errors committed in the first trial were prejudicial to *Appellant's* rights and the mistrial was justified by manifest necessity.

¶ 14 While the parties largely frame the issue as whether the case would have been reversed on appeal, this is not the scope of our review. The question facing the district court was whether "taking all the circumstances into consideration," there was "a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated." *Perez*, 22 U.S. at 580, 6 L.Ed. at 165. A common thread uniting our prior cases where jeopardy attached upon the unnecessary discharge of the jury was a district court's *mistaken* conclusion that a mistrial was *required* under prevailing law. *Loyd*, 6 Okla.Crim. at 84, 116 P. at 962 (mistrial unnecessary based on erroneous conclusion that information charging murder in one county was invalid where deceased died in another county); *Yarbrough*, 90 Okla.Crim. at 80–82, 210 P.2d at 378–79 (mistrial unnecessary where juror declared personal knowledge of case during trial; statute required juror first be examined by counsel in open court); *Pickens*, ¶¶ 3–10, 393 P.2d at 890–92 (mistrial was unauthorized where State's principal witness failed to appear after jury was sworn); *Sussman*, ¶¶ 51–56, 455 P.2d at 733 (discharge of jury where State failed to prove element of arson amounted to acquittal); *Painter*, ¶ 3, 531 P.2d 341–42 (mistrial to prevent *Bruton* confrontation problem was unnecessary, as court could have excluded statement of co-defendant as hearsay);

688

*McClendon v. State*, 1988 OK CR 186, ¶¶ 4–6, 761 P.2d 895, 896–97 (record did not support district court's conclusion that mistrial was required where juror recognized he knew appellant's sister); *Harris*, ¶ 21, 777 P.2d at 1365 (mistrial of burglary charge was unnecessary despite failure to certify defendant as adult; failure to certify only rendered conviction voidable and did not deprive court of jurisdiction).

■ ¶ 15 By contrast, the determination of when evidentiary errors have denied a fair trial and doomed a case to reversal is rarely a clear cut matter. *Ozbun v. State*, 1983 OK CR 29, ¶ 3, 659 P.2d 954, 956, n. 1 (trial court did not abuse its discretion in declaring mistrial; witness' non-responsive comment about "two ex-cons running around with shotguns" provided a "very cogent and compelling reason"). A trial court has both the power and the duty to declare a mistrial when misconduct or other evidentiary errors have compromised the right to a fair trial. *Edwards v. State*, 1947 OK CR 123, 85 Okla.Crim. 125, 130–32, 186 P.2d 333, 335–36 (improper comment on defendant's failure to testify resulted in duty to declare mistrial); *Mendenhall v. State*, 1946 OK CR 39, 82 Okla.Crim. 220, 224, 168 P.2d 138, 140 (trial court has duty to ensure defendant receives a fair trial). The exercise of this power necessarily involves considerable legal judgment, requiring the application of sometimes complex legal rules and a broad array of factors unique to the trial court setting, including the demeanor of witnesses, the reactions of the jury, the perceived efficacy of admonitions, the cumulative impact of prejudicial errors, and other intangibles.

¶ 16 At the time of these errors, the previous trial was not finished, and the district court had already concluded the State's witnesses committed evidentiary errors which infected the trial with unfairness.[1] The district court clearly considered not only these errors, but also the fact that counsel had timely objected when they occurred. Defense counsel strangely declined the offer of a certain curative remedy, instead requesting exclusion of the witness' testimony and an instruction to jurors about evidentiary harpoons. Counsel thus created a record with preserved errors, and possible ineffective assistance of counsel, in a mandatory life without parole case. On appeal, appellate counsel would have flourished the district court's repeated offers of a mistrial as evidence of how inflammatory the harpoons *really were;* and argued zealously that trial counsel's rejection of the mistrial was deficient representation which led directly to Appellant's erroneous conviction. Given the mandatory sentence of life without parole required by Appellant's prior convictions, his arguments might well have garnered support for reversal.

¶ 17 The district court's discharge of the previous jury after these evidentiary errors reflected a scrupulous adherence to the evidentiary rules by which trials involving grave mandatory penalties must be conducted. We could certainly attempt to decide whether these errors were rendered harmless—not only by the district court's admonitions, but by the evidence of Appellant's guilt—but such an analysis of an incomplete trial seems unwise. We are encouraged in this view by the recognition that "[c]ourts of last resort must establish precedents under which innocent men are to be tried." *Stough v. State*, 1942 OK CR 115, 75 Okla.Crim. 62, 128 P.2d 1028, 1031–32, *quoting Humphrey v. State*, 1910 OK CR 54, 3 Okla.Crim. 504, 507, 106 P. 978, 979. Abuse of discretion is therefore

1. Despite trial counsel's objections and his request for an instruction to jurors that the state's witnesses had injected "evidentiary harpoons," appellate counsel now argues that none of the comments to which counsel objected were classic evidentiary harpoons. *Lambert v. State*, 1999 OK CR 17, ¶ 47, 984 P.2d 221, 235 (evidentiary harpoons are voluntary statements of experienced police officers, willfully jabbed to inject evidence of other crimes, and calculated to prejudice a defendant). This much of Appellant's argument is an exercise in semantics. The "evidentiary harpoon" of our case law is simply a particular species of inadmissible testimony, its probative value being substantially outweighed by the danger of unfair prejudice. 12 O.S.Supp.2004, § 2403. The district court's correct use of a legal catch-phrase is unimportant. In substance, the district court sustained defense counsel's objections, and ultimately granted a mistrial, because it concluded the witnesses had testified unfairly and prejudiced Appellant's right to a fair and impartial trial.

the only appropriate scrutiny to be applied to a ruling of this character. When an experienced trial court concluded that Appellant's rights to a fair and impartial trial and effective assistance of counsel were irreparably compromised, it was faced with a "cogent and compelling reason" to order a mistrial and discharge the jury. *Ozbun*, ¶ 3, 659 P.2d at 956. We find no abuse of discretion in this ruling, and no former acquittal which barred Appellant's retrial and conviction. Proposition One is denied. In Proposition Three, Appellant argues ineffective assistance of counsel as a precaution against a finding that his claims in Propositions One and Two were waived. Since we addressed this claim on the merits, Proposition Three is moot as it pertains to Proposition One.

■ ¶ 18 Appellant's Proposition Two claims that police violated his freedom from unreasonable search and seizure by entering the apartment and approaching him in the bedroom after he turned and walked quickly out of their sight. Appellant filed a pre-trial motion to suppress the evidence, which the district court denied. He argued generally in the district court that consent to enter the apartment was either non-existent or involuntary. On appeal he maintains this claim, but now asserts a different claim that the entry exceeded the scope of a qualified consent. This much of the claim is waived, but we review the issue for plain error.

■ ¶ 19 Under the Fourth Amendment and Article II, section 30 of the Oklahoma Constitution, warrantless searches are *per se* unreasonable, absent a recognized exception. A warrantless police intrusion into a protected area is reasonable, and thus constitutionally permissible, if preceded by free and voluntary consent. *Burkham v. State*, 1975 OK CR 150, 538 P.2d 1121, 1123. Any person with common authority over jointly occupied premises may consent to a warrantless search. *Smith v. State*, 1979 OK CR 142, 604 P.2d 139, 140. Whether a voluntary consent was given is a question of fact to be determined from all the circumstances. This Court will defer to the trial court's finding of voluntary consent where competent evidence reasonably tends to support it. *Sullivan v. State*, 1986 OK CR 39, ¶ 12, 716 P.2d 684,

687. Concerning the scope of a voluntary consent, the authorities show that

> [w]hen the police are relying upon consent as the basis for their warrantless search, they have no more authority than they have apparently been given by the consent ... But, the question is *not* to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer. As the Supreme Court concluded in *Florida v. Jimeno*, the standard is "that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the [consenting party]?"
>
> Consents to search are not given in the abstract; the police are interested in searching a particular place, and thus it is the practice for them to specify a certain place, such as a residence or vehicle. If, as is likely, the consent given in response is general and unqualified, then the police may proceed to conduct a general search of that place.

W. LaFave, 3 Search and Seizure: A Treatise on the Fourth Amendment, § 8.1(c), 610 (3d ed., West 1996) (emphasis in original; internal references omitted), *quoting Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

■ ¶ 20 Decisions interpreting the Fourth Amendment have also recognized that "[u]nder appropriate circumstances police officers, in the course of their duty, may approach and question suspicious individuals in order to determine their identity or to maintain the status quo momentarily while obtaining more information, even though there are insufficient grounds for arrest." *Prock v. State*, 1975 OK CR 213, ¶ 18, 542 P.2d 522, 526, *citing Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In *Prock*, this Court found that when an officer "was in a place he had a right to be" while investigating a report of suspicious behavior, the officer's seizure of a gun that was in plain view in the defendant's waistband during the encounter was reasonable; and the evidence was admissible in a prosecution for unlawful possession of a firearm. *Id.*, ¶¶ 18–19, 542 P.2d at 526–27. Under this

"plain view" exception to the warrant requirement, an officer may always confiscate "what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Lyons v. State,* 1989 OK CR 86, ¶ 7, 787 P.2d 460, 463.

¶ 21 Appellant primarily argues the officers' act of approaching him in the bedroom—at which point they observed him in the commission of an offense—exceeded the scope of Benson's consent. The record contradicts this. Despite evidence that Benson initially gave verbal consent to the officers' entry and later executed a written consent to search the apartment, Benson testified the officers obtained no consent and forced their way past him into the apartment. The officers testified that before they asked to enter, they introduced themselves and explained to Benson that the purpose of their visit was to investigate a complaint of drug dealing inside the apartment. They also testified that Benson later executed a free and voluntary consent to search the premises.

¶ 22 Although the facts of the exchange between the officers and Benson were disputed, the evidence showed a voluntary consent to enter the premises. Officers did not exceed the reasonable scope of that consent when they approached Appellant in the bedroom. Viewed objectively, when the officers informed Benson of the purpose of their visit, Benson's act of stepping aside and telling officers to "Come on in" reasonably implied a right of access sufficient to identify persons inside the apartment and make a reasonable inquiry into whether drug dealing had recently been in progress. From their lawful vantage point inside, the officers saw Appellant. When Appellant saw them, he turned and walked quickly out of their view. We need not decide whether this alone provided sufficient justification for an immediate investigative detention and pat-down search of Appellant, because no such detention or "stop and frisk" happened. The officers, lawfully within the apartment, simply approached someone they deemed suspicious "to determine their identity or to maintain the status quo momentarily while obtaining more information." *Loman v. State,* 1991

OK CR 24, ¶ 17, 806 P.2d 663, 666–67. Before any investigative detention occurred, the officers plainly viewed Appellant in possession of marijuana, at which point his arrest was based on probable cause.

¶ 23 Appellant has presented nothing to suggest he held any greater right to control the area of the apartment where he was found than Benson did; he had no reasonable expectation that entering the bedroom would shield him from an encounter with the officers who were present pursuant to Benson's consent. *Sullivan,* ¶ 8, 716 P.2d at 686 (law of consent recognizes that co-inhabitants assume the risk that one of their number may consent to search of common area). Because the officers' entry and Appellant's warrantless arrest for possession of marijuana were lawful, the evidence obtained when it dropped from Appellant's clothing at the police station was admissible at trial. Proposition Two is denied. Proposition Three, in which Appellant claims ineffective assistance of counsel based on trial counsel's failure to argue this scope of consent issue in the court below, necessarily fails because Appellant cannot show either deficient performance or prejudice. *Malone v. State,* 2007 OK CR 34, ¶ 90, 168 P.3d 185, 219 (failure to object to admissible evidence is not ineffective assistance of counsel).

¶ 24 In Proposition Four, Appellant argues the admission at preliminary examination of a report of laboratory analysis over his objection violated his right to confront his accusers. The report itself does not appear in the original record or transcript of evidence on appeal, but Appellant states in his brief that "information in the report established both that the evidence seized was cocaine base and that it weighed over eight grams." Relying largely on developments in the law of confrontation in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and subsequent Supreme Court case law, Appellant argues the admission of this report without the testimony of its maker violated his right to confront his accusers.

¶ 25 Appellant's argument is fraught with conceptual problems, but relief is unneces-

sary for the more basic reason that he waived the right to confront at preliminary examination the witness who prepared the report. Under 22 O.S.Supp.2004, § 751, a "laboratory report from a forensic laboratory operated by this state or any political subdivision thereof," which has been "made available to the accused by the office of the district attorney at least five (5) days prior to the hearing," shall be received "as evidence of the facts and findings stated, if relevant and otherwise admissible in evidence." § 751(A)(3), (A)(5). When such a report is deemed relevant "by the state or the accused, the court shall admit the report without the testimony of the person making the report, unless the court, pursuant to subsection C of this section, orders the person making the report to appear." § 751(A)(5). Section 751(C) further provides that the court, "upon motion of the state *or the accused,* shall order the attendance of any person preparing a report submitted as evidence in any hearing prior to trial or forfeiture hearing, when it appears there is a substantial likelihood that material evidence not contained in such report may be produced by the testimony of the person having prepared the report" (emphasis added).

¶ 26 When the State tendered the laboratory report identifying the type and amount of controlled dangerous substances as evidence just before the conclusion of the preliminary hearing, Appellant objected. Defense counsel argued:

> [A]lthough Oklahoma Statutes permit a hearsay exception for the lab results and Medical Examiner's reports, a state hearsay exception cannot trump a constitutional guarantee. It's also clear from case law that [the] right of confrontation applies in preliminary hearings, and I ask the Court to honor that right in this case.

The district court overruled the objection and admitted the document in evidence, relying

largely on *State v. Tinkler,* 1991 OK CR 73, 815 P.2d 190, *overruled on other grounds, State v. Johnson,* 1992 OK CR 72, 877 P.2d 1136.[2]

¶ 27 The preliminary examination provided by Article II, section 17 of the Oklahoma Constitution is "a personal privilege for benefit of accused, which may be waived by him." *Ex parte Pruitt,* 1949 OK CR 66, 89 Okla.Crim. 312, 207 P.2d 337, 339. While the law confers a limited right to confront adverse witnesses at preliminary examination, that right is also subject to waiver. *Beaird v. Ramey,* 1969 OK CR 195, ¶ 7, 456 P.2d 587, 589; *LaFortune v. District Court,* 1998 OK CR 65, ¶ 11, 972 P.2d 868, 872 ("At the preliminary hearing, a defendant must not be denied his Constitutional right to be confronted with his accusers"); *Miles v. State,* 1954 OK CR 33, ¶ 15, 268 P.2d 290, 298 (defendant in a criminal action may be held to waiver of the right to confrontation by conduct inconsistent with a purpose to exercise it), *citing* 23 C.J.S. Criminal Law § 1009, p. 377, n. 97.

¶ 28 We find that the current version of the statute includes an opportunity for confrontation—effectively forcing the proponent of the certified report to produce the witness for cross-examination—upon a timely motion and a proper showing. Counsel clearly waived the right to confront the witness when he made no motion to have the witness appear as authorized under section 751(C), and offered no showing, either at preliminary examination or on appeal, of any "substantial likelihood that material evidence not contained in such report" would have been produced "by the testimony of the person having prepared the report." If counsel truly intended to exercise Appellant's rights to confront and cross-examine the witness, rather than merely intoning a spurious objection to the laboratory report, the statute provided a

**2.** In *State v. Tinkler,* this Court reversed a district court's ruling that 22 O.S.Supp.1988, § 751, allowing the admission of a hearsay report at preliminary hearing, violated a defendant's right to confrontation. *Tinkler* was decided under an early version of section 751. The Court found that by enacting section 751, the Legislature "created a narrow, limited exception to the hearsay rule, applicable only in the case of a prelimi-

nary examination ... [and] that the ability to confront the actual witness is *eliminated* by the establishment of the rule." *Tinkler,* ¶ 11, 815 P.2d at 192 (emphasis added). As detailed in the opinion above, language in the current version of section 751(C) provides a procedure for exercising a right of confrontation not contained in the text considered by the Court in *Tinkler.*

**682**

clear procedure for asserting those rights. Appellant ignored the statutory procedure and waived the right to confrontation.

¶ 29 Judge Chapel in dissent argues that admission of the drug analysis report under section 751 unconstitutionally denied Appellant's right to confront his accusers at preliminary examination, relying on *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The robust exposition of that case in the dissent simply has no application here. In *Melendez–Diaz,* the Supreme Court held the state trial court's admission of a hearsay drug analysis report *at a criminal trial,* without an opportunity to cross-examine the maker of the report, violated the Sixth Amendment's Confrontation Clause as interpreted by the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *See Melendez–Diaz,* 129 S.Ct. at 2532, *quoting Crawford,* 541 U.S. at 54, 124 S.Ct. at 1365 ("[a]bsent a showing that the [drug] analysts were unavailable and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to be 'confronted with' the analysts at trial") (emphasis in original).

██ ¶ 30 The Oklahoma Constitution, Article II, section 17, establishes the right to preliminary examination in felony prosecutions. "Quite simply, a preliminary examination is not a trial." *Tinkler,* ¶ 10, 815 P.2d at 192. The scope of the right to confrontation of accusers at preliminary examination, like the scope of a preliminary examination itself, is subject to reasonable legislation. *LaFortune,* ¶ 10, 972 P.2d at 871 (noting that 1994 legislative amendments to Title 22 substantially limited scope and purpose of preliminary examination). The Supreme Court, in a unanimous opinion by Justice Marshall, long ago acknowledged the important distinction between the two proceedings in a case from Oklahoma, *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968):

The right to confrontation is basically *a trial right.* It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. *A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists* to hold the accused for trial.

*Barber,* 390 U.S. at 725, 88 S.Ct. at 1322 (emphasis added).

¶ 31 In section 751 of Title 22, the Legislature provided for the admissibility of certain reports at preliminary examinations and other hearings, and established reasonable conditions for a party to request an opportunity to confront the witnesses making those reports. Section 751 is a reasonable enactment, and Appellant has completely failed to show how admission of the drug analysis report at preliminary examination over his objection violated his constitutional rights. The dissent broadly endorses Appellant's constitutional attack on section 751, even though Appellant never invoked the confrontation procedure provided in section 751(C); never bothered to explore the parameters or potential limitations of that procedure through litigation in the court below; and never offered the slightest suggestion that he suffered prejudice from the admission of the drug analysis report in his case.

¶ 32 The dissent gleans from *Melendez–Diaz* that admission of these forensic reports at preliminary examinations over the objection of the accused, pursuant to section 751, "violates the Sixth Amendment right to confrontation." We simply reiterate the words of this Court when it upheld section 751 against a confrontation challenge many years ago:

In the present case, we are not concerned with the protection of the accused's right to confrontation *at trial,* but rather at a proceeding that is merely *precursory to a trial,* a proceeding which in fact determines whether the trial should even occur. *It follows then, that the rights and privileges afforded participants may not be the same for both trial and preliminary examination.*

*Tinkler,* ¶ 6, 815 P.2d at 192 (emphasis added). *Melendez–Diaz* applies the Confrontation Clause of the Sixth Amendment *strictly within the confines of a criminal trial.* Un-

like the petitioner in *Melendez–Diaz*, Appellant in this case was afforded a complete opportunity to confront the maker of the drug analysis report when the analyst testified for the State and was cross-examined by defense counsel (very briefly, it turns out) at trial. We are confident Appellant's conviction is free from the error condemned by the Supreme Court in *Melendez–Diaz*. Because Appellant abandoned the opportunity for confrontation at preliminary examination provided by section 751(C), no further review is required. Proposition Four is denied.

■ ¶ 33 In Proposition Five, Appellant argues that the Trafficking in Illegal Drugs Act, 63 O.S.Supp.2004, § 2–415, violates due process and equal protection by creating an unconstitutional presumption of intent to distribute drugs based solely on the quantity of drugs possessed. We addressed a virtually identical claim in *Anderson v. State*, 1995 OK CR 63, ¶ 5, 905 P.2d 231, 233, and concluded:

> [T]he term "trafficking" as used in this statute does not create a presumption a defendant sold the drugs or intended to sell drugs. Rather, the Legislature, in one part of the statute, has defined "trafficking" as possessing specific amounts of a controlled dangerous substance. The statute merely sets forth guidelines for punishment, and represents a determination by the Legislature that "those who possess [a drug in excess of a specified amount] deserve a stiff punishment."

*Id.*, quoting *United States v. Maske*, 840 F.Supp. 151, 158 (D.D.C.1993). Appellant's attempt here to recast the argument rejected in *Anderson* as an equal protection challenge is without merit. *Love v. State*, 2009 OK CR 20, ¶¶ 5–7, 217 P.3d 116, 118–19 (rejecting equal protection challenge). The drug trafficking statute is constitutional. Proposition Five is denied.

■ ¶ 34 Appellant's Proposition Six argues that his mandatory sentence of life without parole for trafficking in illegal drugs violates Article II, section 9 of the Oklahoma Constitution and the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution. He concedes that this Court rejected the same claim in *Dodd v. State*, 1994 OK CR 51, 879 P.2d

822, but notes that "[t]wo of the three members of the Oklahoma Court of Criminal Appeals who decided the majority opinion in *Dodd* are no longer sitting on this Court." While the change of personnel on a court may provide the occasion to revisit established precedents, it cannot alone provide the justification. Appellant's sentence is indeed harsh, but it is neither cruel nor unusual in the sense prohibited by our constitutions. Proposition Six requires no relief.

¶ 35 The Judgment and Sentence of the District Court of Tulsa County is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., and A. JOHNSON, V.P.J., concur.

LUMPKIN, J., specially concur.

CHAPEL, J., dissent.

LUMPKIN, Judge, specially concur.

¶ 1 I concur in the Court's analysis and the affirming of the judgment and sentence. The supplemental briefing in this case points to a distinction that needs to be made between constitutional rights and statutory procedures. In this day and age, some would make every issue a constitutional issue, however, that is not always the case. In the recent case of *Melendez–Diaz v. Massachusetts*, —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the United States Supreme Court discussed a defendant's right, under the Sixth Amendment to the United States Constitution, to confront the witnesses against him/her at trial. Both the U.S. Supreme Court and this Court have held that this right of confrontation is a trial right. *Howell v. State*, 1994 OK CR 62, ¶ 18, 882 P.2d 1086, 1091, citing *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). Judge Lewis appropriately points out this fact and this Court's analysis of the issue in *State v. Tinkler*, 1991 OK CR 73, ¶ 10, 815 P.2d 190, 192. In this case, Appellant was afforded that right at his trial, when Paul Schroeder, forensic chemist with

the Tulsa Police Department, was called and testified. Defense counsel thoroughly cross-examined the chemist at trial.

¶ 2 It is interesting that in *Melendez–Diaz*, Justice Scalia, writing for the Court, sought to downplay the impact of requiring live confrontation at trial by noting: .

> Many States have already adopted the constitutional rule we announce today, while many others permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report. Despite these widespread practices, there is no evidence that the criminal justice system has ground to a halt in the States that, one way or another, empower a defendant to insist upon the analyst's appearance at trial.

129 S.Ct. at 2540–2541 (internal citations and footnotes omitted).

¶ 3 Thus, at least implicitly, the U.S. Supreme Court confirmed that the type of notice/demand procedure set out in 22 O.S.Supp.2004, § 751(A)(3) meets constitutional muster, even in a trial setting. In discussing the burden shifting argument made by the dissent, the Supreme Court made its holding explicit:

> First, the dissent believes that those state statutes "requiring the defendant to give early notice of his intent to confront the analyst," are "burden-shifting statutes [that] may be invalidated by the Court's reasoning." That is not so. In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. Contrary to the

dissent's perception, these statutes shift no burden whatever.

129 S.Ct. at 2541 (internal citations omitted).

¶ 4 The proposition of error in this case does not allege a violation at trial, but at preliminary hearing, a stage of the criminal proceeding at which the federal right of confrontation under the Sixth Amendment is more limited. *See Barber v. Page, supra; State v. Tinkler, supra.* Therefore, this Court must only determine if there was statutory compliance in this case. It appears from the record that notice was given prior to preliminary hearing and the defense merely objected, without an attempt to call the chemist to testify. Because the defense did not call the chemist or attempt to examine the witness, much of the argument raised by the dissent in this case is not ripe for decision by this Court. We cannot rule based merely on the speculation of how the statute might have been interpreted if it had been invoked. As a result of my review of *Melendez–Diaz*, I find no error and join with the Court in affirming the judgment and sentence in this case.

CHAPEL, Judge, dissenting.

¶ 1 I dissent based on the majority's resolution of Propositions I and IV. In Proposition I, the majority opinion correctly acknowledges that in cases dating back to Statehood, this Court has consistently held that when a criminal jury trial has been properly commenced, a mid-trial mistrial cannot be granted without the defendant's consent, except in cases of "manifest necessity."[1] The United States Supreme Court and this Court have repeatedly recognized that the Constitutional protection against "Double Jeopardy" includes the right not be "twice put in jeopardy" for the same offense, whether or not the original trial results in an actual verdict.[2] The opinion also correctly con-

---

1. The majority cites *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824), for its description of the "manifest necessity" standard, which notes that district courts will have to exercise "sound discretion" in making this determination. It should likewise be noted that the holding of *Perez* was simply that a hung jury could qualify as a manifest necessity, such that a

defendant could be re-tried after his original jury was unable to reach a verdict. *Id.* at 579–80.

2. *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Okla. Const. art. 2, § 20 ("Nor shall any person be twice put in jeopardy of life or limb for the same offense."); *Perez*, 22 U.S. 579; *Loyd v. State*, 1911 OK CR

cludes that the resolution of Randolph's Proposition I double jeopardy claim depends entirely on whether the district court's declaration of a mistrial in the original trial, and over Randolph's objection, was authorized by "manifest necessity."

¶ 2 The majority notes that the "common thread" uniting this Court's cases finding that a particular defendant could *not* be retried is the fact that the mistrial declaration resulted from the district court's "*mistaken* conclusion that a mistrial was required under prevailing law" (emphasis in original). Nevertheless, the majority somehow then rejects Randolph's Proposition I claim without finding either that the mistrial declaration in this case was justified by manifest necessity or that the district court *correctly* concluded that a mistrial was required—which it certainly was *not*.[3] The district court was quite candid that it was declaring a mistrial, on its own motion and over defense objection, in order to avoid "wasting the Court's time and court resources," as well as those of the parties, by completing a trial that the court (inexplicably) felt was basically "doomed" to reversal on appeal. Neither the district court nor today's majority opinion explicitly

acknowledges the right of a defendant to a decision by the jury originally empanelled to hear his or her case.[4] Even if the district court had all the best intentions and was sincerely attempting to preserve the defendant's right to a fair trial, this does *not* mean that the defendant can be retried when that court abuses its discretion by unnecessarily declaring a mistrial, over the objection of the defendant.[5]

¶ 3 In *Sussman v. District Court of Oklahoma County*,[6] this Court found that "manifest necessity" in this context "*must be forceful and compelling* and must be in the nature of a cause or emergency over which neither court nor attorney has control, or which could not have been averted by diligence and care."[7] And just as "scrupulous adherence to [ ]evidentiary rules" is called for in "trials involving grave mandatory penalties," so is scrupulous protection of fundamental constitutional rights, such as the protection against Double Jeopardy.[8] There is nothing new or subtle about the double jeopardy principles that should have prevented the district court from so eagerly granting a mistrial in this case, and that should compel this Court to reverse defendant's convictions and find that

255, 6 Okla.Crim. 76, 80–81, 116 P. 959, 961 (finding that "put in jeopardy" language of Oklahoma Constitution mandates conclusion that defendant is protected against second prosecution (absent consent or necessity in discharge of first jury), regardless of whether first trial resulted in verdict).

3. No one familiar with this Court's jurisprudence can seriously conclude that the testimony upon which the district court based its mistrial declaration would have had *any* substantial likelihood of resulting in a reversal by this Court, particularly since the defendant twice declined the trial court's offer of a mistrial. The district court's legal conclusion in this regard is entirely unreasonable, even granting that predicting results on appeal is often not "a clear cut matter."

4. If a district court is truly convinced that a case is doomed to reversal on appeal, the proper procedure is to allow the jury to reach a verdict; and if that verdict results in any convictions, then grant a defense motion for a new trial. This approach both preserves the defendant's right to the verdict of the jury empanelled to hear his case and can avoid the "waste" of time and resources that would have been spent on the avoided appeal.

5. The sarcasm and cynicism of the majority opinion regarding this claim seem entirely misplaced. In the original trial defense counsel made basic objections to specific police testimony. Counsel never asked for and twice rejected the court's offer of a mistrial. There is nothing surprising or unusual about these circumstances; hence there is nothing surprising or ironic about the defendant's resultant Proposition I claim on appeal.

6. 1969 OK CR 185, 455 P.2d 724 (per curiam).

7. *Id.* at ¶ 40, 455 P.2d at 730 (emphasis in original).

8. It should be noted that this Court has faithfully applied the Double Jeopardy principles discussed herein even in cases involving the most serious of crimes, i.e., even when the result was that a murder defendant could not be re-prosecuted. *See, e.g., McClendon v. State*, 1988 OK CR 186, 761 P.2d 895, 895–96 (finding double jeopardy prevented any retrial of murder defendant, after trial court dismissed original jury, over defense objection, based merely on juror's statement that he recognized a spectator in courtroom, who he thought might be the defendant's sister).

he cannot be re-tried.[9] This Court should conclude, as we did in *Sussman:* "[T]here is a right way and a wrong way to do things. In this case, the wrong procedure was followed, and it is the opinion of this Court that jeopardy has applied."[10] Hence Randolph should prevail on his Proposition I claim.

¶ 4 In addition, I cannot agree with the majority's resolution of Proposition IV. In Proposition IV, Randolph argues that the preliminary hearing magistrate erred in admitting a laboratory analysis report, over his objection, without requiring testimony from the analyst who prepared the report. Randolph claims this violated his Sixth Amendment right to confrontation. The majority states that this argument is "fraught with conceptual problems." On the contrary, I find Randolph's argument clear, easy to understand, and supported by recent United States Supreme Court case law.

¶ 5 A defendant has the right to confront witnesses who bear testimony against him at every critical stage of trial.[11] This Court has held that preliminary hearing is a critical stage of trial.[12] If there were any doubt about a defendant's right to confrontation at preliminary hearing, it is put to rest by the Oklahoma statute governing preliminary hearings and Oklahoma case law, both of which grant defendants a right of confrontation at preliminary hearing.[13]

¶ 6 Recently, in *Melendez–Diaz v. Massachusetts,* the United States Supreme Court held that the right to confrontation applies to documents, as well as witnesses, at all critical stages of trial.[14] The core class of testimonial evidence includes "*ex parte* in-court testimony or its functional equivalent" such as affidavits and other written material.[15] The key is whether the written material consists of sworn declarations or affirmations made for the purpose of proving a fact.[16] *Melendez–Diaz* concerned convictions for cocaine trafficking and distribution. Proof that the substance possessed by defendants was cocaine was provided by sworn "certificates of analysis" containing the laboratory reports of a state forensic laboratory, in accordance with Massachusetts law. The Supreme Court found that these certificates were not only made under circumstances which would lead an objective observer to conclude they might

9. In *Goodman v. State,* 1929 OK CR 23, 41 Okla.Crim. 405, 413, 273 P. 900, 902, the defendant claimed "that the action of the court in discharging the jury over his objection was such an abuse of judicial discretion as to amount to an acquittal." Even at that time this Court commented that "the question argued and urged by the defendant is not a new question in this state" and noted that the Supreme Court of Oklahoma Territory (in 1903) recited and applied the following rule:

"The general rule is that the prisoner has been put in jeopardy when he has been put upon trial before a court of competent jurisdiction, upon an indictment or information sufficient to sustain a conviction, and the jury has been empanelled and sworn to try the case, and the jury is discharged without sufficient cause, and without the defendant's consent; and such discharge of the jury, although improper, results in an acquittal of the defendant."

*Id.* at 415, 273 P. at 903 (quoting *Schrieber v. Clapp,* 1903 OK 96, ¶ 6, 13 Okla. 215, 74 P. 316, 317).

10. 1969 OK CR 185, ¶¶ 56–57, 455 P.2d at 735.

11. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).

12. *Norton v. State,* 2002 OK CR 10, 43 P.3d 404, 408.

13. 22 O.S.Supp.2003, § 258; *See, e.g., Thompson v. State,* 2007 OK CR 38, 169 P.3d 1198, 1206–07. I note also the distinction between a preliminary hearing and a grand jury. By statute, defendants have the right to confront witnesses at a preliminary hearing. There is no right to confrontation in grand jury proceedings. However, every Oklahoma defendant who is indicted by a grand jury has a right to a subsequent preliminary hearing, where he is granted the right to confront witnesses. 22 O.S.2001, § 524; *Stone v. Hope,* 1971 OK CR 302, 488 P.2d 616, 618. Shortly after statehood, this Court held that the state statutes and Constitution abolished the previous grand jury system and established indictment or information as concurrent methods of prosecution. *In re McNaught,* 1 Okla. Crim. 528, 99 P. 241, 252 (1909). The Court emphasized the protections afforded citizens at preliminary hearing, including the right of confrontation.

14. *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 2531–32, 174 L.Ed.2d 314 (2009).

15. *Melendez–Diaz,* 129 S.Ct. at 2531–32.

16. *Melendez–Diaz,* 129 S.Ct. at 2532.

be used later at a trial, but that under Massachusetts law the affidavits' sole purpose was to provide prima facie evidence of the substance's composition, quality and weight.[17] The Court concluded that the analysts who prepared these reports were witnesses against Melendez–Diaz, through the reports' contents. The Court noted that the Confrontation Clause guarantees a defendant the right to confront witnesses against him, and the Compulsory Process Clause guarantees a defendant the right to call witnesses in his favor. The Court commented, "[T]here is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation."[18]

¶ 7 The important point here is that a defendant must be allowed to cross-examine the preparer of a report about the information which is included in the report—that is, the information which the State seeks to introduce as evidence against him. This is what, following Oklahoma's current statute, 22 O.S. § 751, Randolph was not allowed to do. Randolph raises nothing less than the question of whether our current statute remains constitutional in light of *Melendez–Diaz*. I conclude that it does not.

¶ 8 In order to avoid the clear requirements of *Melendez–Diaz*, the majority concludes that there is no right to confrontation at preliminary hearing. The majority first argues that the right to confrontation at preliminary hearing may be limited by statute. Certainly, the legislature may limit presentation of witnesses at a preliminary hearing to those necessary to sustain the State's low burden during those proceedings by allowing the trial court to cut off witnesses after the State's burden is met.[19] However, the statute allowing this procedure explicitly grants a right to confrontation against the State's witnesses.[20] Although there is a difference between the right to present witnesses and the right to confront them, the majority does not recognize that difference. By the majority's reasoning, a preliminary hearing magistrate could hear the State's evidence, refuse to allow any defense cross-examination of witnesses, and bind the defendant over on the charged offense.

¶ 9 The majority relies heavily on *State v. Tinkler*,[21] in which we first upheld § 751, and the cases cited therein. *Tinkler* notes that a preliminary hearing differs from a trial, and the scope of rights available to a defendant may differ as well.[22] However, *Tinkler* does not hold that there is no right to confrontation at preliminary hearing. *Tinkler* upheld the statute as a legislatively created exception to the hearsay rule, based on economic concerns.[23] In my opinion, the Supreme Court's decision in *Melendez–Diaz* supercedes our opinion in *Tinkler*. Put simply, *Tinkler* and § 751 were good law before *Melendez–Diaz*. Now they are not.

¶ 10 The majority and *Tinkler* quote from a Supreme Court case, *Barber v. Page*, discussing the difference between preliminary hearing and trial and noting that the right of confrontation is "basically a trial right".[24] Even a cursory reading of *Barber* shows its underlying assumption that a right to confrontation at preliminary hearing exists. In *Barber* the State wanted to use a preliminary hearing transcript in lieu of calling a witness at trial, without showing the witness was unavailable; defense counsel had not cross-examined the witness at the preliminary hearing. The *Barber* Court found that whether or not the defendant had cross-examined at preliminary hearing, on the facts of this case such a cross-examination would not have been sufficient to preserve the defendant's right to confrontation at trial. The *Barber* Court stated, "While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of

17. *Id.*

18. *Melendez–Diaz,* 129 S.Ct. at 2534.

19. *LaFortune v. District Court,* 1998 OK CR 65, 972 P.2d 868, 871; 22 O.S.Supp.2003, § 258.

20. 22 O.S.Supp.2003, § 258.

21. 1991 OK CR 73, 815 P.2d 190.

22. *Tinkler,* 815 P.2d at 192.

23. *Tinkler,* 815 P.2d at 192–93.

24. 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

the confrontation clause where the witness is shown to be actually unavailable...."[25] If there is no right to confrontation at preliminary hearing, this makes no sense.

¶ 11 I understand that the majority wishes to uphold the statute at issue, which deprives both the State and the defendant of the right to question an expert who prepared a laboratory report. However, that is not what the opinion says. By concluding the defendant has no right to confrontation at preliminary hearing, the majority suggests a defendant may be prevented from questioning witnesses who actually testify for the State. That is, after all, what the right of confrontation consists of—the ability to question witnesses who testify against you. I cannot conceive of any circumstances under which such a conclusion would be either constitutional or fair.

¶ 12 The majority thus first determines that *Melendez–Diaz* does not control in this case because there is no right to confrontation at preliminary hearing in this case. However, inexplicably, the majority goes on to claim that an Oklahoma statute governing (among other things) state forensic and OSBI laboratory reports preserves the right to confrontation at preliminary hearing, and that Randolph waived his right under that statute. The majority's analysis of that statute is doubly flawed. It misrepresents the statutory provisions regarding waiver of witnesses, and assumes that the statute preserves the right to confrontation at issue here.

¶ 13 Preservation of the right to confrontation, of course, is the crucial constitutional issue. The statute, 22 O.S. § 751, allows introduction of certified laboratory or forensic reports at any pretrial hearing without a sponsoring witness. Section 751(A) provides that such certified reports from the OSBI, Oklahoma Bureau of Narcotics and Dangerous Drugs, Department of Safety, Medical Examiner, or state forensic laboratories, shall be admitted if the State has given five days notice to the defendant; if that condi-

tion is not met the trial court may grant a continuance sufficient to provide the defense five days to prepare after the report is furnished.[26] On its face, this statute allows a laboratory report to be introduced at preliminary hearing without calling the person who prepared the report to the witness stand. The notice requirement does not give a defendant the right to call and confront the preparing witness, but gives the defendant the equivalent of five days to prepare for the report's introduction without a sponsoring witness. One consequence of this is that the defendant cannot cross-examine the person who prepared the report about the material contained in the report. That is, the defendant cannot cross-examine a witness about the evidence being introduced against him. This is precisely what *Melendez–Diaz* prohibits.

¶ 14 After *Melendez–Diaz*, Section 751 can only be found constitutional if it makes provision for protection of the right to confrontation. Currently it does not. The majority relies on Section 751(C). This subsection does not, as the majority would have it, preserve the right to confrontation at issue here. In fact, this subsection explicitly provides that the defendant shall not have the right to confront a preparing witness about the contents of the report. Instead, this subsection provides that a defendant may follow specific procedures to ask that a preparing witness be called *"when it appears there is a substantial likelihood that material evidence not contained in such report may be produced by the testimony of the person having prepared the report."* [27] That is, a defendant may ask the trial court, in writing, to call a witness if he believes the witness may be able to testify to something not contained in the witness's written report. This does not preserve the defendant's right to confront the witness about the contents of the report which are admitted against him.

¶ 15 In fact, Section 751(C)(1) has nothing to do with the right of confrontation. At the most it tracks the Compulsory Process

**25.** *Barber*, 390 U.S. at 725–26, 88 S.Ct. at 1322.

**26.** 22 O.S.Supp.2004, § 751(A). Section 751 was amended by the Legislature, effective No-

vember 1, 2009. The amendment does not substantively change the subsections discussed here.

**27.** 22 O.S.2009, § 751(C)(1) (emphasis added).

Clause and allows the defendant an opportunity to request the appearance of a witness who might have some evidence relevant to something other than the report which that witness prepared to be used as evidence against the defendant. In *Melendez–Diaz* the Supreme Court held that a defendant's right under the Compulsory Process Clause to call analysts was not a substitute for the State's duty to make them available under the Confrontation Clause. The defendant's right to subpoena a witness does not fulfill the right to confrontation, because a subpoenaed witness may fail to appear. "Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused. More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." [28]

¶ 16 Finally, the majority opinion relies on Section 751(C) to find that, because Randolph failed to follow the written procedures outlined therein, he waived any right to confront the sponsoring laboratory witness at preliminary hearing. Given the actual language of the statute this simply makes no sense. At the most, Randolph waived the right to ask the preparing witness about matters which may have had relevance to the proceedings but were not contained within the report. Section 751(C) provides no right to confront the preparing witness about the material actually introduced in the report to prove an element of the crime, and failure to follow its procedures cannot result in waiver of that right.

¶ 17 A defendant, of course, may waive a preliminary hearing entirely. He may choose not to cross-examine witnesses at the preliminary hearing, effectively waiving the right to confrontation. However, a defendant may not be prevented from exercising the right to confrontation. That is what Section 751 does. The majority suggests that, because the defendant did not timely ask in writing that a witness be called to testify to material other than that in the report admitted against him, he waived his constitutional right to confront the witness who prepared that report about the information it contained. There is no basis in the statutory language or the law for this conclusion.

¶ 18 The trial court allowed the State to admit a laboratory report against Randolph without affording him an opportunity to cross-examine its preparer. Insofar as Section 751 allows introduction of a laboratory report without an opportunity for cross-examination, it violates the Sixth Amendment right to confrontation. That report was introduced to show the quantity of drugs necessary to bind Randolph over on the trafficking charge. Randolph should have had the chance to confront the witnesses who prepared that evidence. I understand the Legislature's desire to simplify pretrial process by allowing admission of laboratory results without any sponsoring witness. However, I agree with the United States Supreme Court that, "We do not have license to suspend the Confrontation Clause when a preferable trial strategy is available." [29] I dissent.

---

**28.** *Melendez–Diaz,* 129 S.Ct. at 2540.

**29.** *Melendez–Diaz,* 129 S.Ct. at 2536.